# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02908-PAB-MEH

KATHLEEN DITTER, an individual and
DREW DITTER, an individual,

      Plaintiffs,

v.

SUBARU CORPORATION , a foreign corporation;
SUBARU OF AMERICA, INC., a New Jersey corporation;
NORTH AMERICAN SUBARU INC. , a New Jersey corporation;
SUBARU RESEARCH & DEVELOPMENT, INC., a California corporation;
SUBARU OF INDIANA AUTOMOTIVE, INC., an Indiana corporation; and
JOHN DOE NOS. 1-40

      Defendants.

---

## FIRST AMENDED COMPLAINT AND JURY DEMAND
---

COME NOW the Plaintiffs, by and through their attorneys, Bolson Law LLC and Bisnar Chase, LLP, and for their Civil Complaint against Defendants allege and aver as follows:

### GENERAL ALLEGATIONS

1.     This is an action to recover for personal injuries to Kathleen (Katie) or (KATIE) Ditter, who was seriously injured on April 19, 2019 as a result of defects in the Defendants' automotive products during a low-speed motor vehicle accident (hereinafter "the subject accident"), and for the resulting damages to Plaintiffs.

2.      Plaintiffs Katie Ditter and Drew Ditter are and at all relevant times were citizens of Colorado. At all relevant times, Plaintiffs Katie Ditter and Drew Ditter were and are husband and wife pursuant to the laws of the State of Colorado.

3.      At all times necessary to this action Defendant SUBARU CORPORATION was and is a Japanese corporation headquartered in and with its principal place of business in Tokyo, Japan. SUBARU CORPORATION has regularly done, and is doing, business in the State of Colorado and elsewhere throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State of Colorado. Defendant SUBARU CORPORATION transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court.

4.      At all times necessary to this action Defendant SUBARU OF AMERICA, INC. was and is a New Jersey corporation headquartered in and with its principal place of business in New Jersey. Subaru of America, Inc. has regularly done, and is doing, business in the State of Colorado and elsewhere throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State of Colorado. Defendant Subaru of America, Inc. transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court. Subaru of America, Inc. maintains a registered agent for service in Colorado: The Corporation Company, 7700 E Arapahoe Rd., Suite 220, Centennial, Colorado, 80112-1268.

5.     At all times necessary to this action Defendant NORTH AMERICAN SUBARU INC. was and is a New Jersey corporation headquartered in and with its principal place of business in New Jersey. NORTH AMERICAN SUBARU INC. has regularly done, and is doing, business in the State of Colorado and elsewhere throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State of Colorado. Defendant NORTH AMERICAN SUBARU INC. transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court.

6.     At all times necessary to this action Defendant SUBARU RESEARCH & DEVELOPMENT, INC. was and is a California corporation headquartered in and with its principal place of business believed to be in Michigan, California, Indiana, and/or New Jersey. Subaru Research & Development, Inc. has regularly done, and is doing, business in the State of Colorado and elsewhere throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State of Colorado. Defendant Subaru Research & Development, Inc. transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court.

7.     At all times necessary to this action Defendant SUBARU OF INDIANA AUTOMOTIVE, INC. was and is an Indiana corporation headquartered in and with its principal place of business in Indiana. Subaru of Indiana Automotive, Inc. has regularly done, and is doing, business in the State of Colorado and elsewhere

throughout the United States, and has systematically conducted business on a regular basis in the State of Colorado under and by virtue of the laws of the State of Colorado. Defendant Subaru of Indiana Automotive, Inc. transacts business in the State of Colorado and is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction of this Court. Upon information and believe, Subaru of Indiana Automotive Inc. was formally known as Subaru-Isuzu Automotive, Inc.

8.     Defendants JOHN DOES 1-40 are believed to be individuals, partnerships, corporations, and/or business entities, doing business in the State of Colorado. The true names and/or capacities, whether individual, corporate, governmental, or otherwise of Defendants DOES 1 through 40, inclusive, are unknown to Plaintiffs, who thus sue said Defendants by such fictitious names. When the true names and/or capacities of said Defendants are ascertained, Plaintiffs will seek leave to amend the complaint accordingly. Plaintiffs are informed and believe that each Defendant designated herein as a Doe was responsible, negligently, or in some other actionable manner, for the defective product(s) at issue and/or the events described herein that were a cause of injuries and damages to Plaintiffs.

9.     SUBARU CORPORATION, SUBARU OF AMERICA, INC., NORTH AMERICAN SUBARU INC., SUBARU RESEARCH & DEVELOPMENT, INC., SUBARU OF INDIANA AUTOMOTIVE, INC., and JOHN DOES 1-40 are hereinafter collectively referred to as "Subaru" or "SUBARU."

10.     Upon information and belief, Subaru of America, Inc., North American Subaru Inc., Subaru Research & Development, Inc., and Subaru of Indiana

Automotive, Inc. are wholly owned subsidiaries of Subaru Corporation, thereby further qualifying as "manufacturers" pursuant to C.R.S. 13-21-401(1), which includes "any seller of a product who is owned in whole or significant part by the manufacturer."

11. Subaru is a multi-national corporation that operates worldwide through its various subsidiaries, including American subsidiaries. The Subaru/Subaru Corporation entities, including the foreign Subaru/Subaru Corporation entities, placed the subject defective products into the stream of commerce with knowledge and intent that such products would reach every state in the United States, including Colorado. Upon information and belief, many thousands of identical and/or similar Subaru products are sold and/or used throughout the State of Colorado, and Subaru makes resulting profits.

12. Upon information and belief Subaru should reasonably anticipate being hailed into court in Colorado for various reasons, including but not limited to the following: the original sale of the Subject vehicle occurred in Colorado; Subaru has consented to personal jurisdiction of Colorado courts in prior lawsuits filed against it; Subaru has purposefully availed itself of the benefits of doing business in Colorado; Subaru has a regular plan for distribution of automobiles within the United States, including in Colorado, with the goal of achieving a commercial benefit from the sale of those products in Colorado; Subaru places automobiles into the stream of commerce by targeting Colorado through a network of automobile dealers in the State of Colorado; Subaru directs Colorado residents to approved Colorado locales to purchase new Subaru vehicles and to have recall work performed on their products; Plaintiffs'

claims are connected with or related to Subaru's contacts with Colorado; and there is little or no burden on Subaru in litigating this case in a Colorado court.

13.     Upon information and belief, at all times necessary to this action the Subaru Defendants, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their Subaru co-Defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that all of said acts were subsequently performed with the knowledge, acquiescence, ratification, and consent of the respective principals, and the benefits thereof accepted by said principals.

14.     Despite being properly seat-belted, Katie Ditter suffered serious and permanent injuries in the subject accident, which injuries could have and/or would have been lessened and/or prevented had the driver's side airbag properly deployed.

15.     Subaru designed, tested, engineered, assembled, fabricated, formulated, produced, constructed, approved, manufactured, packaged, labeled, marketed, licensed, distributed, prepared for sale, and sold the Impreza and all of its components, including all the components alleged to be defective herein.

16.     The conduct of Subaru, and/or John Does 1-40 was such that it constituted a gross deviation from the standard of reasonable care.

17.     When the SUBJECT VEHICLE, a certain 2012 Subaru Impreza, Vehicle Identification Number JF1GPAC69CG230668, Colorado License Plate No. 151YGG (hereinafter, the "SUBJECT VEHICLE"), including the driver's airbag ("SUBJECT AIRBAG") and all components, including the sensors, modules, inflators and the associated algorithms and any and all component parts, and the programming and

calibration thereof which would determine or assist in determining when and under what circumstances and with what forces the airbag in the SUBJECT VEHICLE would deploy ("SUBJECT AIRBAG SYSTEM") was designed, programmed, calibrated and manufactured, SUBARU, and DOES 1 through 40, inclusive, were engaged in the business of manufacturing, fabricating, designing, assembling, programming, calibrating importing, distributing, selling, inspecting, servicing, repairing, marketing, warranting, selling, retailing, wholesaling, and advertising, and each and every component part and system thereof, including the SUBJECT AIR BAG and the SUBJECT AIRBAG SYSTEM. At all times herein mentioned SUBARU and DOES 1-40 were responsible for the design, assembly, programming, calibration, manufacture, installation and performance of all aspects of the SUBJECT VEHICLE, including the SUBJECT AIRBAG SYSTEM and SUBJECT AIRBAG, including all sensors and all algorithms, and when and under what circumstances and with what forces the airbags would be deployed. The SUBJECT VEHICLE was first placed into the stream of commerce as a new vehicle in Colorado by SUBARU for its benefit and the benefit of all Defendants herein. The SUBJECT VEHICLE was defective in being supplied with a defective and dangerous supplemental restraint airbag system, including the SUBJECT AIRBAG SYSTEM and the SUBJECT AIRBAG, and including, but not limited to, sensors, modules, and the related algorithms, programming, calibration, being able to properly and effectively determine the forces involved in a frontal crash so as determine when and under what circumstances the SUBJECT AIRBAG should or should not deploy, and with forces the SUBJECT AIRBAG should or should not deploy. It was reasonably foreseeable to Defendants

that the SUBJECT VEHICLE would foreseeably and likely experience a frontal impact. Defendants also knew, or in the exercise of reasonable care should have known, that in order for the SUBJECT AIRBAG to adequately protect the driver of the SUBJECT VEHICLE and not harm the occupants of the vehicle, the SUBJECT AIRBAG would need to timely, properly, safely and reasonably deploy and that when the SUBJECT AIRBAG deployed the driver's body would be in a safe position so that the driver would be protected by and not be harmed by the deployment of the airbag, including, but not limited to suffering serious brain, facial and eye injuries, including blindness. Defendants knew, or in the exercise of reasonable care should have known that due to the improper, inadequate, defective and unsafe algorithms, sensors, programming and calibration of the SUBJECT AIRBAG SYSTEM, as well as other defects of the SUBJECT AIRBAG and SUBJECT AIRBAG SYSTEM the driver of the SUBJECT VEHICLE would be exposed to increased and unreasonable risks of harm when the SUBJECT VEHICLE was involved in a frontal impact and the SUBJECT AIRBAG deployed. Defendants knew, or in the exercise of reasonable care should have known, that the SUBJECT AIRBAG SYSTEM should only deploy when necessary and only with that force which was necessary to protect the vehicle occupants, and that if the SUBJECT AIRBAG would deploy when it was not necessary, proper or reasonable then the occupants of motor vehicles, including the SUBJECT VEHICLE, would be unreasonably and substantially harmed by the deployment and/ or the over aggressive deployment of the airbags, including the SUBJECT AIRBAG. Defendants knew, or in the exercise of reasonable care should have known, that the SUBJECT VEHICLE, SUBJECT AIRBAG and/or SUBJECT

AIRBAG SYSTEM would be used without inspection for defects in its parts, mechanisms, or design, including but not limited to the SUBJECT AIRBAG and the SUBJECT AIRBAG SYSTEM, restraint and protection systems, and related components that were designed, tested, manufactured, assembled, sold and/or distributed by Defendants, for use in Colorado and elsewhere.

18. Despite their actual knowledge of the risks of frontal impacts and the SUBJECT AIRBAG deploying onto the driver of the SUBJECT VEHICLE and the need for the SUBJECT AIRBAG SYSTEM to timely and adequately detect a frontal impact to determine when the SUBJECT AIRBAG should or should not deploy and for the SUBJECT AIRBAG to timely, adequately, safely, properly and reasonably deploy, but only with sufficient force to protect the vehicle occupants instead of harm them, and the substantial risks of harm to occupants if there was an improper, unsafe, unnecessary, improper or over aggressive or dangerous deployment of the airbag, and other consequences of events begun when there is a frontal impact, SUBARU continued to produce the SUBJECT VEHICLE, SUBJECT AIRBAG and SUBJECT AIRBAG SYSTEM and component parts and systems, with defective, insufficient, improperly and defectively and dangerously functioning drivers front airbag systems, including the SUBJECT AIRBAG and the SUBJECT AIRBAG SYSTEM which, upon foreseeable frontal impacts, would be deployed improperly, dangerously, unsafely, unnecessarily and with too much force, upon the bodies and faces of the front seat occupants and which could and in fact would cause and has caused serious injuries, including serious brain, facial, and eye injuries, including blindness.

19.    SUBARU had and continues to have a corporate culture of indifference to known risks of injuries to vehicle occupants when a driver's front airbag would deploy onto the occupants, and SUBARU has continued the design, marketing, construction, and sale of the SUBJECT VEHICLE with defective and dangerous front airbags that would deploy improperly, too fast, unnecessarily and too aggressively onto the bodies and faces of the front seat occupants thereby causing serious injuries to the face and eyes of the occupants, including serious brain and eye injuries, lacerations, and/or blindness.

20.    On or about April 19, 2019, at approximately 4:17 pm., KATHLEEN DITTER ("KATIE"), 48 years old, was driving in the driver's seat of the SUBJECT VEHICLE, which was traveling eastbound in the 2900 block of E. Prospect Road, Fort Collins, Colorado. KATIE was fully and properly using her seat belts. The front of the SUBJECT VEHICLE struck the rear of a 2011 Honda CRV, Colorado License Plate Number CMK 613, causing Stage One and Stage Two deployments of the SUBJECT AIRBAG, so as to unnecessarily, improperly, defectively, dangerously and unreasonably, too aggressively and with too much force, deploy onto the face of KATIE. Because of the SUBJECT VEHICLE's defective, dangerous, insufficient, inadequate and unsafe SUBJECT AIRBAG SYSTEM, including the sensors, and the setting, calibration and programming of the algorithms as to when and under what circumstances, and with what amounts of force the SUBJECT AIRBAG SYSTEM would cause the SUBJECT AIRBAG to deploy upon occupants, and the failure of the SUBJECT VEHICLE to adequately detect an impact as to when the SUBJECT AIRBAG should or should not deploy, KATIE suffered and continues to suffer serious

and permanent injuries, including a brain injury, facial laceration, and blindness in her right eye.

## JURISDICTION AND VENUE

21.    Plaintiffs incorporate all allegations contained above, and allege that the damages sought herein exceed the jurisdictional minimum limits of the District Court of Denver, Colorado, namely the loss of the Plaintiff's right eye, brain injury, facial laceration, and other damages as set forth and identified in more detail below.

22.    Venue is proper in the District Court of Denver, Colorado pursuant to C.R.C.P. 98(c)(1) because nonresident SUBARU Defendants may be found in Denver County. Each of the nonresident defendants may also be tried in the county designated in the complaint, which is Denver, County, and Plaintiffs accordingly designate Denver County.

23.    SUBARU is a multi-national corporation that operates worldwide. SUBARU placed the subject defective products into the stream of commerce with knowledge and intent that such products would reach every state in the United States, including Colorado. Upon information and belief, many thousands of identical and/or similar SUBARU products are sold and/or used throughout the State of Colorado, and SUBARU makes resulting profits.

24.    Upon information and belief SUBARU should reasonably anticipate being haled into court in Colorado for various reasons, including but not limited to the following: SUBARU has purposefully availed itself of the benefits of doing business in Colorado actively, both directly and through agents and franchisees, subsidiaries and/or corporate divisions, by marketing and selling its products in the

state of Colorado, including Impreza passenger vehicles; SUBARU has a regular plan for distribution of automobiles within the United States, including in Colorado, with the goal of achieving a commercial benefit from the sale of those products in Colorado; SUBARU maintains authorized dealerships in Colorado and the agency relationships between and amongst itself and its dealerships are such that the acts of one of the SUBARU dealerships in operating in Colorado are attributable to SUBARU; SUBARU places automobiles into the stream of commerce by targeting Colorado through a network of automobile dealers in the State of Colorado; SUBARU has ongoing contractual warranty repair and regulatory recall responsibilities with respect to its vehicles purchased and utilized in the State of Colorado; SUBARU engages in parts distribution operations within Colorado with regard to its products; SUBARU marketed and sold defective products within Colorado, including the subject vehicle; and SUBARU utilized the Colorado Court system in prosecuting and defending actions.

25.     Plaintiffs' claims are connected with or related to SUBARU's contacts with Colorado because the subject vehicle was purchased in Colorado, used in Colorado, and caused injury in Colorado, and because other identical and substantially similar vehicles are sold and used throughout Colorado. There is little or no burden on SUBARU in litigating this case in a Colorado court.

26.     Upon information and belief, at all times necessary to this action the SUBARU Defendants, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their SUBARU co-defendants, and were, as such, acting within the course, scope, and authority of said agency,

employment, and/or venture, and that all of said acts were subsequently performed with the knowledge, acquiescence, ratification, and consent of the respective principals, and the benefits thereof accepted by said principals.

**FIRST CAUSE OF ACTION**
**STRICT PRODUCT LIABILITY**
**(Against Defendants SUBARU, and DOES 1 through 40, Inclusive)**

27.   Plaintiffs incorporate, repeat, and re-allege each and every allegation in paragraphs 1 through 26 above, and incorporate the same by reference as though set forth herein.

28.   SUBARU, and DOES 1 through 40, and each of them, knew that the SUBJECT VEHICLE containing its component parts and systems was to be purchased and used without inspection for defects by the users of that vehicle, including but not limited to the owner and driver of the SUBJECT VEHICLE, on the date of the SUBJECT ACCIDENT.

29.   The SUBJECT VEHICLE and each of its component parts were manufactured, designed, programmed, calibrated, assembled, imported packaged, tested, fabricated, analyzed, inspected, merchandised, marketed, distributed, labeled, advertised, promoted, sold, supplied, leased, rented, repaired, serviced, adjusted, selected, and used with inherent defects both in design and manufacturing and by failure to warn (hereinafter the "SUBJECT DEFECTS"). The SUBJECT DEFECTS made the SUBJECT VEHICLE dangerous, hazardous, and unsafe both for their intended uses and for reasonably foreseeable misuses.

30.   It was foreseeable to Defendants, and each of them, that the SUBJECT VEHICLE and its component parts would and could be involved in a motor vehicle

accident involving a frontal impact and which would and could cause the frontal airbags to deploy onto the bodies and faces of the occupants.

31. SUBARU and DOES 1 through 40, and each of them, designed, tested, assembled, programmed, manufactured, supplied, imported, marketed, promoted, sold, distributed, and put into the stream of commerce the SUBJECT VEHICLE in a defective and unreasonably dangerous condition. SUBARU and DOES 1-40 are strictly liable for the SUBJECT DEFECTS that, on April 19, 2019, caused personal injuries and damages to KATIE, including, but not limited to, a traumatic brain injury, facial lacerations, and blindness in her right eye. These defects include but are not limited to the following design and/or manufacturing defects:

a. AIR-BAG SYSTEM'S UNNECESSARY, DANGEROUS, DEFECTIVE AND/OR AGGRESSIVE DEPLOYMENT: A defective and unsafe supplemental restraint system, which, with respect to the SUBJECT AIRBAG SYSTEM, failed to properly detect a necessary and appropriate frontal impact which would cause the SUBJECT AIRBAG to timely and adequately deploy in a frontal collision. This defect included but is not limited to the following:

(1) Inadequate sensor numbers and locations and dangerously defective sensing and sensor systems: Defendants used fewer sensors than necessary, cheap sensors, and/or sensors designed for other uses or which were inappropriate to use, which led to defects that caused the remaining sensors to not function and perform properly, and to adequately and appropriately detect a collision and to determine if and when the airbag, including the first and second stage airbags, should be

14

deployed, exposing the front occupants to an increased, unreasonable and preventable risk of serious injury, including serious brain, facial and eye injuries, including blindness. Defendants failed to adequately test the numbers, calibration, and location of sensors in foreseeable crash scenarios, which also resulted in the dangerously defective sensors systems.

(2)   Defectively designed and manufactured sensing and diagnostic module (SDM) and/or Airbag Control Module ("ACM"), which failed to adequately determine whether and when the SUBJECT AIRBAG should or should not deploy in frontal impact collisions, and the failure to adequately detect an impact in which the SUBJECT AIRBAG SYSTEM should deploy the SUBJECT AIRBAG;

(3)   Inferior, insufficient, inadequate and unsafe algorithms: The newer air bag systems such as the one used or available for use in the SUBJECT VEHICLE use electronic sensors that rely on software to analyze deceleration data to determine if and when to deploy the air bag, when and under what circumstances to deploy various stage of airbag deployments, and with what forces to deploy the airbags and the various airbag stages. These software sub-routines, referred to as algorithms, were inadequate algorithms and caused the driver's air bag to improperly and unnecessarily deploy and to deploy too aggressively and with too much force upon the bodies and faces of the vehicle occupants, including KATIE. At all times herein mentioned SUBARU was

15

responsible for the design, assembly, manufacture, installation and performance of all aspects of the SUBJECT AIRBAG SYSTEM, including all sensors and all algorithms, including the programming and calibration thereof, and determining when and under what circumstances and with what forces the SUBJECT AIRBAG, including any and all stages of the SUBJECT AIRBAG were to deploy. This improper, dangerous, unnecessary and / or aggressive deployment of the driver's airbag and all its various stages, caused her brain injury, and serious eye and facial injuries, including blindness in KATIE's right eye.

(4)     Failure of the SUBJECT VEHICLE, and SUBJECT AIRBAG SYSTEM and all components parts thereof to properly detect the forces of a frontal impact to determine whether, when, under what circumstances the SUBJECT AIRBAG should or should not deploy, and with what forces the SUBJECT AIRBAG should deploy upon occupants.

(5)     Failure to Incorporate Adequate Technology: Defendants failed to use systems that can identify the severity of the crash and then deploy the air bag with differing power levels depending upon the energy produced in the crash, and to safely, adequately and reasonably determine when and under what circumstances and with what forces the SUBJECT AIRBAG and all of its various stages should or should not deploy.

b.     The SUBJECT VEHICLE, including the SUBJECT AIRBAG SYSTEM and the SUBJECT AIRBAG failed to perform as safely as an ordinary

consumer would expect because it had a propensity of the SUBJECT AIRBAG to deploy too late after the driver's body had moved too closely to the airbag module so that there was an overaggressive deployment of the airbag onto the face and head of the driver causing serious injuries to the occupants instead of protecting the occupants which would not be expected by an ordinary consumer.

c.      DEFECTIVE RESTRAINTS: A defective and unsafe restraint system including but not limited to spool out, retractor malfunction and/ or failure and/or poor seatbelt geometry– which SUBARU knew and was aware would fail to adequately restrain a driver of the SUBJECT VEHICLE in the event of a frontal-impact collision, and which, in this case, failed to properly restrain KATIE.

d.      FAILURE TO PROVIDE ADEQUATE WARNINGS OF THE SUBJECT DEFECTS.

32.      At the time of the SUBJECT INCIDENT, the SUBJECT VEHICLE was in substantially the same condition as it was at the time it was placed into the stream of commerce, and no material alterations were made to the vehicle after it left the possession of SUBARU and DOES 1-40.

33.      Moreover, at the time the SUBJECT VEHICLE at issue left the possession of SUBARU and DOES 1-40, there were safer alternative designs other than the designs used in the SUBJECT VEHICLE, which would have prevented or significantly reduced the risk of the airbag deployment causing severe brain injury, facial and eye injuries, including blindness.

34.     These alternative designs were both economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge at the time the SUBJECT VEHICLE left the control of SUBARU and DOES 1-40.

35.     Defendants and each of them, despite their awareness of the aforementioned dangers and defects in the airbag system of the SUBJECT VEHICLE failed to give any warnings to plaintiff and/or other purchasers and users of the SUBJECT VEHICLE or the of the aforementioned dangers and defects in the SUBJECT VEHICLE.

36.     Said products and each of their component parts and/or aftermarket parts and/or installation guides was unsafe for its intended use and reasonably foreseeable misuses by reason of the defects in its design and/or manufacturing and/or failure to warn by said Defendants, and each of them, in that when the SUBJECT VEHICLE and each of their component parts and/or aftermarket parts and/or installation guides were used by KATIE on or about April 19, 2019 as intended or in a reasonably foreseeable manner, the airbag of the SUBJECT VEHICLE, during reasonably foreseeable driving maneuvers and frontal impacts, was dangerous and defective.

37.     The defective and unreasonably dangerous conditions of the SUBJECT VEHICLE, including but not limited to the SUBJECT DEFECTS, rendered it dangerous and defective and the legal cause of KATIE's injuries and damages.

38.     The SUBJECT VEHICLE, the SUBJECT AIRBAG SYSTEM, the SUBJECT AIRBAG, were unsafe for their intended uses and reasonably foreseeable misuses by reason of defects in their design and/or manufacturing and/or failure to

warn by Defendants, and each of them, in that when the SUBJECT VEHICLE was being operated in a normal fashion by KATIE on or about April 19, 2019, as intended or in a reasonably foreseeable manner, the SUBJECT AIRBAG SYSTEM failed to adequately deploy the SUBJECT AIRBAG causing the SUBJECT AIRBAG to deploy improperly, dangerously, defectively, unnecessarily and/ or too aggressively onto KATIE's head and body so that the SUBJECT AIRBAG directly and proximately caused KATIE's serious and permanent injuries, including, but not limited to, a brain injury, facial laceration, and blindness in her right eye.

39. The SUBJECT VEHICLE, and the DEFECTIVE RESTRAINTS were unsafe for their intended uses and reasonably foreseeable misuses by reason of defects in their design and/or manufacturing and/or failure to warn by Defendants, and each of them, in that when the SUBJECT VEHICLE was being operated in a normal fashion by KATIE on or about April 19, 2019, as intended or in a reasonably foreseeable manner, the DEFECTIVE RESTRAINTS failed to adequately protect and restrain KATIE's body in a proper and safe position, and which caused or contributed to the defects of the SUBJECT AIRBAG SYSTEM, the SUBJECT AIRBAG and which caused or contributed directly and proximately to KATIE's serious and permanent injuries, including serious brain, facial and eye injuries, including blindness in her right eye.

40. The SUBJECT DEFECTS made a driver of the SUBJECT VEHICLE susceptible and vulnerable to serious injury and/or death anytime that vehicle would be involved in a frontal impact and the driver's side airbag would deploy.

41. The SUBJECT VEHICLE was unsafe for its intended use and reasonably

foreseeable misuses because of the SUBJECT DEFECTS, in that when the SUBJECT VEHICLE was used by the driver as intended and in a reasonably foreseeable manner, the SUBJECT DEFECTS made the SUBJECT VEHICLE dangerous, defective, and the cause of plaintiffs' injuries and damages.

42. KATIE's permanent injuries and would not have occurred had the SUBJECT DEFECTS not existed in the SUBJECT VEHICLE. The above described SUBJECT DEFECTS were a substantial factor in producing and causing KATIE's permanent injuries. As a direct and legal result of the defects inherent in the vehicle, including but not limited to the SUBJECT DEFECTS:

a. Serious, severe, and permanent injuries were caused to KATIE, legally resulting in damages for medical and health care expenses and other economic damages, and non-economic damages for pain, suffering, disfigurement, emotional pain and suffering, and other losses: all in a sum in excess of the minimum subject matter jurisdiction of the Colorado District Court according to proof at trial.

## SECOND CAUSE OF ACTION
## NEGLIGENT PRODUCT LIABILITY
### (Against Defendants SUBARU, and DOES 1 through 40, Inclusive)

43. Plaintiffs incorporate, repeat, and re-allege each and every allegation in paragraphs 1 through 42 above and incorporate the same by reference as though set forth herein.

44. At all times mentioned, SUBARU and DOES 1 through 40 had a duty to properly manufacture, design, assemble, import, package, test, fabricate, analyze, inspect, merchandise, market, distribute, label, advertise, promote, sell, and provide adequate warnings about the SUBJECT VEHICLE and its component parts and

systems.

45. At all times mentioned, Defendants knew, or in exercising reasonable care should have known, that the SUBJECT VEHICLE and each of its component parts were not properly manufactured, designed, assembled, imported, packaged, tested, fabricated, analyzed, inspected, merchandised, marketed, distributed, labeled, advertised, promoted, or sold, that inadequate warnings and/or no warnings were provided for the use and purpose for which the SUBJECT VEHICLE was intended, and that the SUBJECT VEHICLE was likely to injure or kill the person(s) who used it.

46. Defendants, and each of them, so negligently and carelessly manufactured, designed, assembled, imported, packaged, tested, fabricated, analyzed, inspected, merchandised, marketed, modified, distributed, labeled, advertised, promoted, sold, supplied, leased, rented, repaired, serviced, maintained, selected, and provided inadequate warnings regarding the SUBJECT VEHICLE and its component parts and systems, that it was a defective and dangerous product, unsafe for the use and purpose for which it was intended when used and driven as recommended or for reasonably foreseeable misuse. In particular, the SUBJECT VEHICLE was dangerous and defective because a defective airbag system of the SUBJECT VEHICLE, during a reasonably foreseeable accident sequence, including but not limited to frontal impacts, and potentially serious injuries to the vehicle occupants.

47. Defendants, and each of them, were negligent in designing, manufacturing, and/or selling the SUBJECT VEHICLE and its component,

including, but not limited to the airbag system and all components thereof. Defendants failed to use the amount of care in designing, manufacturing, and/or installing the SUBJECT VEHICLE and its components that a reasonably careful designer, manufacturer, and/or installer would and is required to use in similar circumstances to avoid exposing others to a foreseeable risk of harm. Defendants' negligence was a substantial factor in causing KATIE's injuries and damages.

48.    At the time of the design, programming, calibration manufacture, assembly, distribution, and sale of the SUBJECT VEHICLE, with its component parts and systems, Defendants knew or should have known about the likelihood and severity of potential harm posed by the SUBJECT VEHICLE and the SUBJECT DEFECTS and the comparatively small burden of taking safety measures to reduce or avoid this harm.

49.    The SUBJECT DEFECTS in the SUBJECT VEHICLE were compounded by Defendants' failure to provide adequate instruction or warning of potential safety hazards created by these defects, increasing risk of injury to occupants during a frontal impact accident.

50.    The SUBJECT VEHICLE was also defective because it did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way, including but not limited to the overaggressive airbag deployment.

51.    Alternative safer designs were available to and feasible for Defendants when they designed and manufactured the SUBJECT VEHICLE and  component parts and systems. The cost of any such alternative design and manufacture dwarfs

compared to the seriousness and severity of the harm that could be caused, and that resulted in permanent injuries to KATIE.

52.  The SUBJECT VEHICLE, because of the SUBJECT DEFECTS, had potential risks known to or knowable by Defendants, and each of them, in light of the knowledge generally accepted in the automotive industry at the time of the manufacture, distribution, and sale of the SUBJECT VEHICLE.

53.  The potential risks created by the SUBJECT DEFECTS presented a substantial danger when the SUBJECT VEHICLE was used or misused in an intended or reasonably foreseeable way, including but not limited to when a driver must stop the vehicle suddenly, such as to avoid hitting another vehicle. Ordinary consumers would not have recognized the potential risks created by the SUBJECT DEFECTS. Defendants, and each of them, failed to adequately warn or instruct of the potential risks created by the SUBJECT DEFECTS. The lack of sufficient instructions or warnings was a substantial factor in causing KATIE's permanent injuries and Plaintiffs' injuries and damages.

54.  Defendants were negligent because they failed to recall the SUBJECT VEHICLE. Defendants knew or reasonably should have known that the SUBJECT VEHICLE was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner, including when making evasive driving maneuvers to avoid colliding with another vehicle. Defendants learned of these defects before or after the SUBJECT VEHICLE was sold, but before the SUBJECT ACCIDENT. Yet, Defendants failed to recall or warn of the danger of the SUBJECT VEHICLE. A reasonable manufacturer, distributor, and seller under the same or similar

circumstances would have recalled this motor vehicle. Defendants' failure to recall the SUBJECT VEHICLE was a substantial factor in causing KATIE's permanent injuries and damages.

55. As a direct and proximate result of the negligence, carelessness, and unlawful conduct of Defendants, and each of them, and the defects inherent in the vehicle, including but not limited to the above-stated SUBJECT DEFECTS, Plaintiffs were injured, KATIE suffered a serious eye, facial, and brain injuries which resulted in blindness in her right eye and has suffered serious injuries, including her legally resulting special and general damages in a sum over the minimum subject matter jurisdiction of this Court, according to proof at trial.

## THIRD CAUSE OF ACTION
## LOSS OF CONSORTIUM
### (Against Defendants SUBARU, and DOES 1 through 40, Inclusive)

56. Plaintiffs incorporate, repeat, and re-allege each and every allegation in paragraphs 1 through 55 above and incorporate the same by reference as though set forth herein.

57. At all relevant times, Plaintiffs Katie Ditter and Drew Ditter were and are husband and wife pursuant to the laws of the State of Colorado, and had a close and loving familial relationship.

58. The Plaintiffs Katie Ditter and Drew Ditter were married prior to the subject accident and since their marriage have resided together as husband and wife.

59. Since the subject accident, and as a direct result of the injuries sustained in the subject accident, Plaintiff Katie Ditter's relationship with her husband has been negatively affected and she has been unable to assist with the household chores in the

way previously done. This has required Plaintiff Drew Ditter to complete household chores previously completed by Plaintiff Katie Ditter, has negatively affected their intimate relationship, and has necessitated that Plaintiff Drew Ditter provide care to Plaintiff Katie Ditter and assist her with many things she was able to do for herself prior to subject accident.

60.    As a proximate result of Defendants' acts and omissions set forth herein, Drew Ditter has suffered a loss of time, loss of income, and loss of consortium, affection, love, support, care, society, comfort, companionship, and household services of her spouse, Plaintiff Katie Ditter, and other economic and noneconomic damages, all to her loss, damage, and injury, in an amount to be determined at trial.

61.    As a direct and proximate result of the acts and omissions of the Defendants, and each of them, as set forth herein, Plaintiffs have incurred and seek the following general and special damages, without limitation:

    a.  Past and future physical and mental pain and suffering, emotional distress, and extreme mental anguish;

    b.  Past and future medical, hospital and rehabilitation care and services, physiotherapy care and services, nursing care and services, life care and attendant services, medication, therapy and other expenses, including special medical damages;

    c.  Inconvenience;

    d.  Loss of enjoyment of life, impairment and loss of the quality and value of life, and the loss of enjoyment of life;

    e.  Loss of time;

    f.  Other non-economic damages;

    g.  Past and future loss of earnings, loss of income, loss of earning capacity, an impairment of earning capacity, and loss of household services;

h. Other economic damages;

i. Temporary and permanent physical and mental impairment and disability;

j. Temporary and permanent disfigurement;

k. Drew Ditter's loss of love, support, care, comfort, companionship, affection, consortium, and society of his wife, Katie Ditter;

l. All such other relief and compensatory damages as are permissible at common law and by statute and to which Plaintiffs are entitled.

**WHEREFORE,** Plaintiffs pray for and demand a Judgment against Defendants, and each of them, in a reasonable amount to be determined at trial.

Additionally, Plaintiffs ask for the costs of this action, reasonable attorney fees, costs and expert witness fees, all pre-judgment and post-judgment interest as provided by law, and for all such other relief to which they are legally entitled and as the Court deems appropriate.

**A JURY TRIAL IS DEMANDED ON ALL ISSUES SO TRIABLE.**

DATED: January 26, 2021

*/s/ Anthony P. Bolson*
Anthony P. Bolson, Reg. No. 49208
BOLSON LAW, LLC
1040 S. Gaylord St., Suite 87, Denver, CO 80209
Tel: (720) 506-9224
fax: (720) 902-5665
tony@bolsonlawllc.com

-AND-

*/s/ Steven Hilst*
Brian D. Chase, Esq.
Steven Hilst, Esq.
BISNAR CHASE, LLP

26

One Newport Place
1301 Dove Street, Suite 120
Newport Beach, CA 92660
Tel: (949) 752-2999
Fax: (949) 752-2777
bchase@bisnarchase.com
shilst@bisnarchase.com
*pro hac vice* application to be filed

ATTORNEYS FOR PLAINTIFFS

Plaintiffs' Address:
310 Circle Drive,
Fort Collins, CO 80524