IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02908-PAB-MEH

KATHLEEN DITTER, an individual and
DREW DITTER, an individual,

       Plaintiffs,

v.

SUBARU CORPORATION, a foreign corporation;
SUBARU OF AMERICA, INC., a New Jersey corporation; and
JOHN DOE NOS. 1-40

       Defendants.

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT SUBARU CORPORATION'S MOTION TO DISMISS

### PRELIMINARY STATEMENT REGARDING JURISDICTIONAL DISCOVERY

Plaintiffs' Response is submitted prior to obtaining jurisdictional discovery.[1]  Although Subaru Corporation has agreed to voluntarily respond to certain written jurisdictional discovery requests, there remain unresolved issues concerning the timing and scope of the discovery requests and responses.  As a result, Plaintiff's Response is being submitted now, out of an abundance of caution, as these issues will likely remain unresolved prior to the Plaintiffs' August 5, 2021, filing deadline.  Doc. 70.  Should this discovery uncover additional salient facts, Plaintiffs will seek leave of Court to supplement the record and their briefing.

### SUBSTANTIVE RESPONSE

Defendant Subaru Corporation[2] is a multi-national automobile manufacturer.  The United

---

[1] Plaintiffs believe this Court can deny Defendant Subaru Corporation's Motion to Dismiss based on the record as submitted and without additional jurisdictional discovery.  However, they acknowledge the potential importance of this information.  *See e.g. Est. of Alford v. Fuji Heavy Indus., Ltd*, No. CV 3:15-16449, 2016 WL 756489, at *3 (S.D.W. Va. Feb. 25, 2016)(granting plaintiff's request for jurisdictional discovery regarding Subaru Corporation's contacts with the forum State).

[2] Plaintiffs initially identified Fuji Heavy Industries, Ltd. as the manufacturer defendant in this case.  Defendant Subaru of America (SOA) advised Plaintiffs that Fuji Heavy Industries Ltd. was re-named and is now known as Subaru Corporation.  Doc. 10 ¶ 3.  Plaintiffs amended their Complaint to identify Subaru Corporation as the proper name of

1

States is Subaru's largest market.[3]  In the last year alone, Subaru sold over 702,000 new cars and

SUVs in the United States and generated **billions** of dollars in U.S. sales.[4]  Subaru manufactures

hundreds of thousands of vehicles in the United States.[5]  Subaru has over 7,000 employees in the

United States[6], and freely admits "**our market focus is on the United States…**".[7]

   Subaru vehicles are sold, serviced, and repaired throughout the United States (including in

Colorado) at Subaru-licensed dealers and repair shops. With hundreds of authorized dealers

throughout the United States – and at least a dozen in Colorado alone – Subaru's widespread is easy

to spot.[8]  A short drive on any road in the State will likely encounter dozens of Subaru vehicles.

When drivers and consumers see "SUBARU" on vehicles, and in television, print, and online

advertising - they are viewing the U.S. registered trademark owned by Defendant Subaru

Corporation.[9]  Subaru's ubiquitous trademark is below:



   Subaru spends hundreds of millions of dollars advertising its vehicles each year and targets

those ads to American consumers.[10]  In addition, Subaru routinely defends product liability matters

---

the Defendant manufacturer.  Subaru of America is a wholly owned subsidiary of Subaru Corporation.  Doc. 10 ¶10
(Answer of Subaru of America)
[3] *See* Subaru Corporation's 2020 Annual Report p.85 at: https://www.subaru.co.jp/en/ir/library/pdf/ar/ar_2020e.pdf
(last visited June 29, 2021) (Exhibit 1).
[4] *Id.* at 29.
[5] *See* Exhibit 14 (explaining Subaru's annual manufacturing capacity at its U.S. plant in Indiana will expand to 436,000
units in 2019).
[6] Exhibit 1 at 87.
[7] *Id.* at 4 (emphasis added).
[8] *See* Exhibit 6 and Declaration of Anthony P. Bolson, Exhibit 2 ¶ Q.
[9] *See* Exhibits 3 and 7 - Owner's Manual and Warranty Information of Subject Vehicle identifying ownership of
Subaru's registered trademark.
[10] According to Subaru Corporation, it spent ¥ 84,385,000,000 (or approximately $750,000,000 USD) on advertising
in FY 2019.  *See* Exhibit 1, at p.144.  A collection of Subaru's English language advertising found on the internet is
attached as Exhibit 4. Indeed, one court has already concluded that Subaru Corporation's "**marketing** efforts were
targeted at consumers throughout the United States and specifically in Georgia." *See* Order in *Scanlon v. Fuji Heavy
Industries, Ltd.*, Case No. 18C-5623-4, denying Subaru Corporation's Motion to Dismiss at Exhibit 5 (emphasis

in the United States and has previously admitted to the personal jurisdiction of a Colorado court.[11]

Despite these facts, Subaru Corporation tells the Court it is immune from suit regarding its thousands of products in use throughout Colorado, including the 2012 Subaru Impreza which the Plaintiffs purchased new in Colorado at an authorized Subaru dealership, licensed and titled in Colorado, serviced at a Colorado Subaru dealership, and which caused their claimed injuries in Colorado.

Subaru Corporation's primary argument in support of its Motion to Dismiss is that "Plaintiffs' cause of action could not arise and did not arise from any connection between SBR and Colorado" Doc. 63 p.3. Given this assertion, it is surprising that Subaru Corporation failed address two important precedents - *Cunningham v. Subaru of Am., Inc* - a 10th Circuit case denying a nearly identical Motion to Dismiss[12] and *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.* a recent United States Supreme Court opinion addressing this very issue.[13]

Just like Ford, Subaru is a global auto manufacturing company. It is incorporated and headquartered in Japan. "**But it's business is everywhere**." *Id*. at 1022 (emphasis added). Here,

---

added).

[11] *See* Exhibit 8 Answer in *McCary v. Subaru*, No. 2017CV030198 (Denver Dist. Ct. April 17, 2017) (stating "FHI [Subaru Corporation] admits the existence of personal jurisdiction in this matter.").

[12] *Cunningham v. Subaru of Am., Inc.*, 631 F. Supp. 132, 135 (D. Kan. 1986)(finding Subaru's "efforts to put Subaru vehicles into the stream of U.S. commerce, and its encouragement of such sales and revenue, evidences Fuji's affirmative intent that goods reach the individual states of the United States. It thus must reasonably anticipate being haled into court in those states in which one of its vehicles causes injury to a consumer)

[13] *Ford Motor Co.* was decided on March 25, 2021, in an 8-0 unanimous opinion. 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021). There the Court rejected the same arguments made by Subaru here, explaining that the "arise out of or relate to" language does not require a "but-for" causal connection between Defendants' contacts and the lawsuit. *Id.* at 1033. The *Ford Motor Co.* opinion confirms the Stream-of Commerce test articulated in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Instead, Subaru relies primarily on *Fischer v. BMW of N. Am., LLC*, 376 F. Supp. 3d 1178 (D. Colo. 2019), an Order on appeal, which relied on 10th Circuit law decided before *Ford Motor Co. v. Montana*. More persuasive is a recent opinion applying *Ford Motor Co.* in the context of foreign automobile manufacturers which concluded it was subject to the personal jurisdiction of a U.S. court. *See Lewis v. Mercedes-Benz USA, LLC*, No. 19-CIV-81220-RAR, 2021 WL 1216897, at *36 (S.D. Fla. Mar. 30, 2021) (stating "Daimler has purposefully availed itself of jurisdiction in Florida because it directed the distribution of its vehicles to the state, targeted Florida consumers through advertising, and sold Florida residents its cars through its distributor MBUSA at dealerships in Florida. This is not the case of mere "placement of a product into the stream of commerce, without more."); *see also In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455 (E.D. Tex. July 6, 2021) (finding Japan-based Toyota Motor Company to have purposefully availed itself of the forum.).

the Plaintiffs purchased the Defendant's product in the State of Colorado, the injury occurred in the State where the suit was brought, and the Plaintiffs are residents of the State. The *Ford* court found under these circumstances that "**When a company like Ford serves a market for its product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit.**" *Id.* at 1-2. (emphasis added). In supporting this conclusion, the *Ford* Court agreed that whether Ford "designed, manufactured, or sold [the] vehicle in the State is '**immaterial**.'" *Id. at* 1023 (alteration in original)(emphasis added). Instead, the Court focused on the large number of vehicles it <u>sold</u>, the <u>revenue</u> it derived from sales of autos in the State, the number of licensed <u>dealerships</u>, its <u>resale market</u>, its promotional (<u>advertising</u>) activities, the provision of original <u>repair parts</u> to dealers and auto shops - the same facts present in this case.

## FACTS

This is a product liability action arising out of an accident involving a 2012 Subaru Impreza equipped with a two-stage airbag system. Doc. 53 ¶¶17 and 20. Plaintiff Kathleen (Katie) Ditter, who was properly belted, was seriously and permanently injured as a result of defects in the subject vehicle and its component parts, including the subject airbag system. *Id.* ¶1. Ms. Ditter's driver's airbag was overaggressive and deployed improperly. Katie suffered the loss of vision in an eye and sustained a traumatic brain injury. As properly plead, Plaintiffs assert defect, negligence, and loss of consortium claims against Subaru Corporation.

### *Plaintiffs' First Amended Complaint Alleges Facts Supporting Jurisdiction.*

Plaintiffs alleged the following facts (and others) confirming Subaru Corporation's continuous contacts with the jurisdiction, including:

- Subaru is a multi-national corporation that operates worldwide through its various subsidiaries, including American subsidiaries. Doc. 53 ¶11 (First Amended Complaint).

4

- The Subaru/Subaru Corporation entities, including the foreign Subaru/Subaru Corporation entities, placed the subject defective products into the stream of commerce with knowledge and intent that such products would reach every state in the United States, including Colorado. *Id.*
- Many thousands of identical and/or similar Subaru products are sold and/or used throughout the State of Colorado, and Subaru makes resulting profits. *Id.*
- The original sale of the Subject vehicle occurred in Colorado. *Id.* 12.
- Subaru has consented to personal jurisdiction of Colorado courts in prior lawsuits filed against it. *Id.*
- Subaru places automobiles into the stream of commerce by targeting Colorado through a network of automobile dealers in the State of Colorado. *Id.*
- Subaru directs Colorado residents to approved Colorado locales to purchase new Subaru vehicles and to have recall work performed on their products. *Id.*
- Subaru has a regular plan for distribution of automobiles within the United States, including in Colorado, with the goal of achieving a commercial benefit from the sale of those products in Colorado.

These jurisdictional facts (and others) were specifically plead by the Plaintiffs and align with the Supreme Court's finding of personal jurisdiction in *Ford Motor Co. v. Montana*. **Subaru fails to deny the vast majority of these well-pled facts**, **so they are taken as true in the jurisdictional analysis**.[14] Rather than respond to Plaintiffs' jurisdictional contentions, Defendant's Motion instead states "Plaintiffs have not provided a single fact to support any assertion of personal jurisdiction over SBR." Doc 63 p. 6. The Plaintiff's First Amended Complaint (Doc. 53) belies this assertion.

## SPECIFIC JURISDICTION EXISTS OVER SUBARU CORPORATION

After selling and profiting from the sale of its vehicles (and a multitude of other automotive products) in Colorado, Subaru claims the Court lacks personal jurisdiction. In so doing, it rehashes arguments U.S. courts have long rejected, and ignores recent precedent in which state and federal courts have exercised jurisdiction over automobile manufacturers like Subaru. Subaru offers no credible reason to depart from this settled precedent here.

---

[14] *See Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984) (explaining in ruling on a motion to dismiss for lack of personal jurisdiction "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits").

### *Subaru's Significant Contacts*

Subaru is a multi-national automobile manufacturer, with distributors in more than ninety (90) countries worldwide.[15]  As of 2020, Subaru Corporation employed 7,692 people in the United States.  Exhibit 2 ¶ M.  Subaru Corporation has specifically directed business toward Colorado residents by virtue of its nationwide advertising and Colorado-based licensed dealerships. *See* Exhibits 4 and 6.  It has undoubtedly made significant profits from the sale of its vehicles in the United States and Colorado.  Although formal discovery has not yet commenced against Subaru Corporation, Plaintiffs have informally gathered publicly available evidence demonstrating its systematic contacts, including information from Subaru Corporation's 2020 Annual Report, which, among other things, tells the world: "**our market focus is on the United States…**" and the United States is its "key market." *Id.* at p. 11.  Indeed, Subaru Corporation's largest automobile market is the United States. *Id.* at 29.  In 2020, Subaru sold nearly 702,000 vehicles here. *Id.* Hundreds of thousands of Subaru's vehicles are manufactured in the United States. *Id.* at p.57.[16] Roughly 7 out of every 10 vehicles Subaru Corporation manufacturers is sold in the United States. *Id.* at p.29.  In a 2007 public release of its financial condition, Subaru Corporation (then Fuji Heavy Industries (FHI)) said the following:

> To increase sales globally: **FHI regards the United States as the strategically most important market**. We aim at improving profitability and operational efficiency through <u>integrated management of production and sales and continue to expand the sales network</u>.

Ex. 12 p.8 (emphasis added).

In addition, warranty claims for Subaru vehicles are paid by the Subaru Corporation. Exhibit 11, page 1.  When it faces a recall, as it did for its defective airbags installed in U.S.

---

[15] Exhibit 1 p.91 - Subaru Annual Report

[16] Ex. 1 p. 57 (stating "In FYE March 2021, Subaru of Indiana Automotive, Inc., SUBARU's production base in the U.S., is organizing the event to raise global awareness of quality.")

owner's Subaru vehicles in 2018, Subaru Corporation paid for the recall. Exhibit 10 p.2 (noting "We [Subaru Corporation] posted 56.7 billion yen in recall costs related to airbags for the past fiscal year.").[17] These facts, together with Subaru's failure to contradict well-plead facts, show that it has intentionally, aggressively, and successfully targeted the full U.S. market – **including Colorado** - for sale of its vehicles.

<u>**Legal Standard**</u>

To establish personal jurisdiction over an out-of-state defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). To exercise jurisdiction, the out-of-state defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. and Placement*, 326 US. 310, 323 (1945). In all, the defendant's contacts with the forum must be such that it is foreseeable that the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Specific personal jurisdiction exists where the cause of action is "related to" or "arises out of" the defendant's activities within the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 412 (1984). "Once the plaintiff establishes minimum contacts, the defendant is responsible for demonstrating 'the presence of other considerations that render the exercise of jurisdiction unreasonable.'" *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F.Supp.2d 1237, 1244-45 (D. Colo. 2010) (citing *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

<u>**Due Process Is Satisfied**</u>

---

[17] *See also* Exhibit 15 – Class Action Settlement Notice – Subaru Corporation.

A two-part test governs the due process determination. First, courts look at the contacts between the defendant and the state to determine if they are sufficient to establish the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980). Second, if contacts are sufficient, the court then evaluates whether exercise of personal jurisdiction offends traditional notions of fair play and substantial justice by weighing a variety of interests. *Id.* Both elements are satisfied here.

***Sufficient Contacts.*** Specific jurisdiction, as alleged here, permits courts to exercise jurisdiction over claims that "arise out of or relate to" a defendant's contacts with the forum. *Ford Motor Co.*, 141 S. Ct. at 1033. Thus, the Court must evaluate whether Subaru has sufficient minimum contacts such that: (1) it "purposefully availed" itself of the privilege of conducting business in Colorado, and (2) this case "arises out of or relates to" its Colorado contacts. *Id.* at 1034.

### ***Prong 1 - Purposeful Availment.***

This first element of the test is satisfied if a defendant purposefully avails itself of the greater U.S. market, which necessarily includes Colorado. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1034, 209 L. Ed. 2d 225 (2021). Subaru Corporation purposefully availed itself of the privilege of conducting business here by directing consistent and abundant sales efforts across the United States, including in Colorado. *Id.* at 1022 (explaining Ford's "advertising, selling, and servicing the model of vehicle the suit claims is defective" rendered it subject to the Court's personal jurisdiction.")

There is no question Subaru designs, tests, manufactures, advertises, sells, and services hundreds of thousands of products **it knows** are destined for, or are already located in Colorado

and every other state.[18]   Jurisdictional discovery will likely show Subaru placed thousands of identical and/or substantially similar vehicles into the **Colorado** stream of commerce. Additionally, Subaru has not and cannot credibly deny it generates substantial revenue from the Colorado sales of vehicles containing its products.  Given this, Subaru should certainly expect to be haled into court by users of its vehicles and airbags. The paradigmatic test for purposeful availment is set forth in *World-Wide Volkswagen*, and was reaffirmed by the *Ford v. Montana* Court:

> [I]f the sale of a product of a <u>manufacturer</u> or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the <u>manufacturer</u> or distributor to serve, <u>directly or indirectly</u>, the market for its product in [several or all] other States, <u>it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.</u>

*Ford Motor Co.*, 141 S. Ct. at 1027 (quoting *World-Wide Volkswagen* at 297)(emphasis added). If *Ford* did nothing else, it confirmed the *World-Wide Volkswagen* "stream of commerce" test is still governing law and, contrary to Subaru's suggestion, no subsequent case has changed this analytical framework.[19]   Substituting "Subaru" for "Audi or Volkswagen" (all foreign auto manufacturers with U.S. based distributors) above illustrates this point.[20]

Prior to *Montana v. Ford* the two most recent United States Supreme Court specific

---

[18] Subaru Corporation, as a manufacturer of vehicles, is required to comply with the United States Federal Motor Vehicle Safety Standards (FMVSS).  Compliance testing to American safety standards would be further evidence of their full knowledge and intent that Subaru products will end up in every state of the Union, including Colorado.

[19] Indeed, The *Ford* Court rejected Ford's argument the standard was mere *dicta* and, instead, held this standard has been used continuously as a proper basis for determining "purposeful availment" and is the proper standard to determine specific jurisdiction. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1027, 209 L. Ed. 2d 225 (2021)

[20] The *Ford* Court's adoption of the *World-Wide Volkswagen* standard is also consistent with the Court's purposeful availment standard in *Asahi*. In *Asahi*, the Court articulated a "stream of commerce plus test that there is purposeful availment if conduct of the defendant manufacturer indicates an intent or purpose to serve the market in the forum State, for example, ***designing the product for the market of the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.***" (*Asahi*, *supra* 107 S.Ct. at 1032 [Partial Emphasis added].)

jurisdiction cases, *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) and *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), did **not** change this analysis. They also did not change the state of the law with regard to mass nationwide sales, like Subaru engages in on a regular basis.

Despite Subaru's suggestion otherwise, the importance of *McIntyre* and *Asahi* is not that they somehow changed the entire landscape of specific jurisdiction law. Rather, their importance is that they show **isolated sales** or **random, fortuitous, or attenuated contacts** are not enough. *McIntyre*, 564 U.S. at 888-889(Breyer, J., concurring in the judgment); *Ashai*, 480 U.S. at 120-21 (Brennan, J., concurring in part and concurring in the judgment). Thus, a plaintiff may establish a defendant's minimum contacts by showing the defendant placed goods into the stream of commerce with the expectation that the **regular flow or regular course of sales** could lead the product to the forum state. *See e.g., See J. McIntyre*, 564 U.S. at 889 (Breyer, J., concurring in the judgment); *Asahi*, 480 U.S. at 117, 120-21 (Brennan, J., concurring in part and concurring in the judgment); *World-Wide Volkswagen*, 444 U.S. at 297-98.[21]

Subaru argues it has "no contacts" with Colorado. This assertion fails to recognize the binding legal authority in *Ford Motor Co. v. Montana* and *World-Wide Volkswagen,* which vests this court with jurisdiction over Subaru, a manufacturer "**that delivers its products into the**

---

[21] *See also, Willemsen v. Invacare Corp.*, 282 P.3d 867, 873-75(Or. 2012)(exercising jurisdiction over a foreign manufacturer who sold a wheelchair battery, noting the fact that 1,102 wheelchairs with the defective battery were sold in Oregon was sufficient to show a "regular course of sales" and thus established sufficient minimum contacts under the controlling Breyer concurrence in *McIntyre*). The *Willemsen* Court noted that Justice Breyer's reference to "something more" in his *McIntyre* concurrence **is needed only "in the absence of"** evidence of regular flow or regular course of sales. *Id. See also Johnson v. Chrysler Canada, Inc.*, 24 F. Supp. 3d 1118, 1133-41 (N.D. Ala. 2014) (exercising jurisdiction over Canadian vehicle manufacturer which had no contacts with Alabama but whose main market was the United States through Chrysler dealership channels); *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 178-79 (5th Cir. 2013) (following Justice Breyer's concurrence in *Nicastro* and affirming jurisdiction over Irish manufacturerwhich sold the forklift to a distributor; rather than a single isolated or few sales, the manufacturer sold 13,073 forklifts over ten years, 203 of which were sold to Mississippi customers); *Rowland v. General Motors of Canada Limited*, No. 1:11CV183-SA-SAA, 2013 WL 3381512, at *2 (N.D. Miss. July 8, 2013) (exercising jurisdiction over GM-Canada,whose millions of products were sold to GM-USA for further sale in the United States).

stream of commerce with the expectation that they will be purchased by consumers in the forum State.*" *World-Wide Volkswagen,* 444 U.S. at 297 (emphasis added).

Second, this unsupported claim also ignores that Subaru's vehicles are pervasive mass-produced products that have flooded the Colorado and U.S. markets, and are not limited to a handful of products that have randomly or fortuitously found their way here. These products are in Colorado because of deliberate, continuous, and systematic efforts to market to this and every state in the Union. Subaru fully understands and reasonably expects that it can be haled into court in Colorado to be accountable for its vehicles it has intentionally placed here through its network of dealerships. This is precisely what is required for personal jurisdiction and consistent with controlling U.S. Supreme Court law and subsequent decisions. *See also, Mayo v. General Motors, LLC*, No. 1:15-CV-01418-RBJ, at *12 (D. Colo. July 26, 2016) (attached as exhibit 13) (confirming personal jurisdiction over automobile component part manufacturer, and stating "[w]e are not dealing with an isolated sale or a few sales. I presume that thousands if not millions of Takata seatbelt systems have been installed in General Motors vehicles. Takata was undoubtedly aware that these vehicles would be marketed, sold and driven in every part of the United States.").[22]

With this legal backdrop, and given the facts of this case, there is no doubt Subaru can "reasonably anticipate being haled into court" when one of its many thousands of products

---

[22] *See also, Pegasus Helicopters, Inc. v. Gen. Motors Corp.*, 954 F. Supp. 218, 220-21 (D. Colo. 1997) (asserting jurisdiction over foreign helicopter component part maker, noting that due process concerns are "minimized where the defendant is a **national manufacturer** or distributor, and personal jurisdiction over such defendants turns on whether they have attempted to serve a given market and can expect their products to be used in a given forum"); *Kaplan v. DaimlerChrysler, A.G.*, 99 F.Supp.2d 1348, 1352 (M.D. Fla. 2000) (jurisdiction proper over a German automaker lacking physical U.S. contacts because it intended its vehicles to be sold throughout the U.S.; lack of a direct physical presence in the U.S. "does not necessarily mean that no minimum contacts exist..."); *Inre Cali v. East Coast Aviation Services, Ltd.*, 178 F.Supp.2d 276, 285-89 (E.D.N.Y. 2001) (no unfairness in exercise of jurisdiction over foreign corporation that boasts in annual reports and web site of being a worldwide company); *Holtsclaw v. American Honda Motor Co., Inc.*, 1989 WL 154368 (W.D. Mo. 1989) ("Honda R & D undoubtedly knew--in fact it was its goal--that the ATV would be marketed to the American consumer in the United States…"); *Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707 (Tex.App.-Austin 2000) ("Daimler-Benz places a large volume of vehicles into a stream of commerce destined for the United States").

systematically sold in this State injures a Colorado consumer who purchased that product in Colorado. *World-Wide Volkswagen*, 444 U.S. at 297. Subaru has purposefully availed itself of the benefits of the Colorado market and has obtained benefits from having its vehicles distributed and sold here. It is immaterial that this was done either directly or indirectly through Subaru's wholly owned United States distributor, Subaru of America (SOA). Subaru has sought to cultivate and serve the United States and Colorado markets for its vehicles, and it knows that its vehicles are being sold here.

### Contacts of Subaru's Wholly-Owned Subsidiaries.

In addition to its own contacts within the U.S. and Colorado, the facts demonstrate that Subaru operates as a single unified company under singular ownership and management, so the actions and contacts of its wholly-owned American subsidiary companies, including Subaru of America, can be attributed to it through agency, joint venture, or otherwise. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 759, fn. 13, 187 L. Ed. 2d 624 (2014) ("Agency relationships, we have recognized, may be relevant to the existence of specific jurisdiction").[23] As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there. *See, e.g., Asahi*, 480 U.S. at 112 (act of "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" may amount to purposeful availment).

### Prong 2 - Arise Out of or Relate To:

Subaru's argument for lack of relatedness is really that it did not purposefully avail itself

---

[23] *See also, Shepherd v. U.S. Olympic Comm.*, 94 F.Supp.2d 1136, 1142 (D.Colo. 2000) ("contacts of an agent may generally be imputed to the principal if those contacts are made within the scope of the agent's employment"); *Air Holdings II LLC v. Novartis International* AG, 239 F. Supp. 2d 1161, 1169 (D.Colo. 2003) (parent company with sparse forum contacts subject to personal jurisdiction because the subsidiary acted as its agent in carrying out its business)*Wendt v. Handler, Thayer & Duggan, LLC*, 613 F.Supp.2d 1021, 1030 (N.D.Ill. 2009) (jurisdictional contacts imputed where the joint venturers shared clients expenses, revenues, promotion, and marketing); *Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 68 (Colo. 2007) ("a plaintiff need only make a prima facie showing of the connection between the actions of the agent and the principal to defeat a motion to dismiss for lack of personal jurisdiction).

of the benefits of conducting business in Colorado.  Subaru repeatedly tells the Court it is not registered to conduct business in Colorado, and has no employees in the State, among other red herrings.  Doc. 63-2 ¶¶12 and 14.[24]  However, *Ford Motor Co. v Montana* confirms that there does not need to be a causal link between the specific product in question and a defendants' forum contacts. In answering Ford's assertion that under *Bristol-Myers* specific jurisdiction can be found only when there is a direct causal relationship between the defendant's conduct in the forum state and the subject matter of the litigation, the *Ford* Court held, "[b]ut Ford's causation-only approach finds no support in this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities.  None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id.* (internal citations omitted)(emphasis added).

Plaintiffs' action arises out of and relates to Colorado contacts. The subject vehicle was first retail sold in Colorado, the subject vehicle failed and caused injuries in Colorado, and plaintiffs are residents of Colorado. There cannot be anything more specific than that. Indeed, Plaintiffs' case even satisfies the causal relationship test that was argued by Ford, although rejected by the Ford Court.

### *Direct Sale to Consumers is Unnecessary*

Without providing any support, Subaru suggests it cannot be subject to jurisdiction because it does not sell *directly* to consumers. Doc. 63 ¶10 (stating "SBR does not sell Subaru motor vehicles to dealers or to the general public in Colorado.").  This is not the law. Subaru's decision to deliver its products to consumers *through its subsidiary* (even if that delivery occurs in

---

[24] However, it is notable that Subaru admits it assembles its vehicles in the United States – specifically, in the State of Indiana.  Doc. 63-2 ¶ 4.  These vehicles include modern iterations of the Subaru Impreza, the model of the subject vehicle at issue in this case.

Japan before import and sale in the United States) does **not** render it immune from jurisdiction. In *In re All Terrain Vehicles Litigation*, 1989 WL 30948, *8 (E.D. Pa. 1989) a federal court exercised jurisdiction over Suzuki Japan even though it transferred title of its products in Japan and lacked physical U.S. contacts, noting:

> Suzuki manufactures ATVs in Japan and transfers title to the ATVs in Japan to U.S. Suzuki. Suzuki thus asserts that it has no minimum contacts with the forum. This argument must fail. Suzuki, as a manufacturer has chosen to intentionally serve United States' markets. It has received the economic benefits of substantial sales made in the United States through U.S. Suzuki ... Suzuki, a manufacturer, has obviously chosen to serve United States' markets indirectly, that is, by using U.S. Suzuki as a distributor. Suzuki has delivered the product into the stream of commerce with the expectation that it will be purchased by consumers throughout the United States and thus, has adequate contacts with the forum to make the assertion of jurisdiction over it proper.

*Id.*; *see also In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455 (E.D. Tex. July 6, 2021).[25]  The reasoning in this cases applies equally here.[26]  Additionally, in *J. McIntyre v. Nicastro* 564 U.S. 873 (2011), the Court held that when a manufacturer "seeks to serve a given…market the manufacturer *may be subject to the jurisdiction of courts within that market even without entering the forum.*"  *Id.* at 882.

### Jurisdiction Does Not Offend Fair Play or Substantial Justice.

Subaru has offered no evidence or credible argument why exercising jurisdiction over it

---

[25] *Id.* (noting "TMC avers that the vehicles "manufactured in Japan and sold in the United States are imported primarily by [TMS]". The problem with this argument is that "**jurisdiction does not depend on the technicalities of when title passes.**" (citation omitted) (emphasis added).

[26] The Colorado Supreme Court found jurisdiction was proper over a French tire manufacturer whose products were sold in Colorado, noting "[a] manufacturer may be found to have engaged in the requisite purposeful activity **even when title and control of its products pass outside of the forum state to middlemen who eventually resell the products to consumers within the state.** … Other courts which have considered the question have reached the same result." *Le Manufacture Francaise Des Pneumatiques Michelin,* 620 P.2d at 1045 (emphasis added); *See also*, *Rowland v. Gen. Motors of Canada Ltd.*, 2013 WL 3381512, at *2 (N.D. Miss. July 8, 2013) (transfer of title in another country does not insulate a defendant from jurisdiction because "jurisdiction ... 'does not depend on the technicalities of when title passes;' rather, jurisdiction may attach both to manufacturers who supply their own delivery systems and to those that make use of the distribution systems of third parties,' *Id.* (citing *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 471 (5th Cir. 2006) (quoting *Oswalt v. Scripto, Inc.,* 616 F.2d 191, 197 n. 8 (5th Cir.1980)); *Ex parte DBI, Inc.*, 23 So. 3d 635, 654-56 (Ala. 2009) (exercising jurisdiction over a Korean component part manufacturer, who had no direct business with the forum, noting that *physical* presence is not required and that the defendant "knew that its seat belts were incorporated into automobiles sold by Kia Motors in the United States").

would be unfair or burdensome.  The burden on this large global defendant, who conducts extensive business throughout the United States, is small.  Indeed, Subaru has a history of voluntarily litigating in Colorado and throughout the U.S. – including in the 10th Circuit.  *See* Exhibit 8 Answer in *McCary v. Subaru*, No. 2017CV030198 (Denver Dist. Ct. April 17, 2017) (stating "FHI [Subaru Corporation] **admits** the existence of personal jurisdiction in this matter.")(emphasis added); Exhibit 9, Answer of Subaru Corporation in *Waters v. Fuji Heavy Industries LTD*, No. 19-2525-KHV-GEB (D. Kan Dec. 27, 2019). Likewise, Subaru cannot credibly suggest it was unaware it could be subject to personal jurisdiction of this court, given the number of other courts which have concluded Subaru Corporation is subject to the personal jurisdiction of American courts.[27]

## **CONCLUSION**

Based on the foregoing, Plaintiffs have made a *prima facie* showing of jurisdiction over Subaru Corporation, and as such, Subaru's Motion to Dismiss should be denied.

By: */s/ Anthony P. Bolson*
Anthony P. Bolson, CO Reg. #49208
BOLSON LAW, LLC
1040 S. Gaylord St., Suite 87
Denver, CO 80209
Tel: (720) 506-9224
tony@bolsonlawllc.com

By: */s/ Steven Hilst*
Brian D. Chase
BISNAR CHASE, LLP
One Newport Place
1301 Dove Street, Suite 120
Newport Beach, CA 92660
shilst@bisnarchase.com

---

[27] *See Cunningham v. Subaru of Am., Inc.*, 631 F. Supp. 132, 135 (D. Kan. 1986)(finding Subaru's "efforts to put Subaru vehicles into the stream of U.S. commerce, and its encouragement of such sales and revenue, evidences Fuji's affirmative intent that goods reach the individual states of the United States. It thus must reasonably anticipate being haled into court in those states in which one of its vehicles causes injury to a consumer."); *Burton v. Subaru of Am., Inc.*, 646 F. Supp. 78, 80 (N.D. Ga. 1986)(explaining "[b]y introducing Subaru automobiles into the stream of commerce in the United States through an exclusive distributorship with defendant SOA, defendant Fuji [Subaru Corp.] purposely availed itself of the resulting economic benefits of the sale of the automobiles in the various states, including Georgia."); *Scanlon v. Subaru Corp.*, No. 18C-5623-4 (Gwinnett County GA, December 28, 2018). Exhibit 5.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 4th day of August, 2021, service of the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT SUBARU CORPORATION'S MOTION TO DISMISS** was e-filed with the Clerk of Court via the CM/ECF System which will send notification of such filing to the following:

> Charles Casteel
> Andrew Garnett
> Davis Graham & Stubbs LLP
> 1550 17th Street, Suite 500
> Denver, CO 80202
> Telephone: 303.892.9400
> Facsimile: 303.893.1379

*Attorneys for all Defendants*

> */s/ Anthony P. Bolson*
> Anthony P. Bolson