IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-02908-PAB-MEH

KATHLEEN DITTER, an individual, and
DREW DITTER, an individual,

      Plaintiffs,

v.

SUBARU CORPORATION, a foreign corporation,
SUBARU OF AMERICA, INC., a New Jersey corporation,

      Defendants.

---

**ORDER**

---

      This matter is before the Court on Defendant Subaru Corporation's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 63]. Plaintiffs responded, Docket No. 71, and Subaru Corporation replied. Docket No. 72. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

      On or about April 19, 2019, at approximately 4:17 p.m., plaintiff Kathleen Ditter was driving east in the 2900 block of East Prospect Road in Fort Collins, Colorado. Docket No. 53 at 10, ¶ 20. Ms. Ditter's vehicle, a 2012 Subaru Impreza, struck the rear of a 2011 Honda CRV, causing plaintiff's airbags to deploy "unnecessarily, improperly, defectively, dangerously and unreasonably, too aggressively and with too much force,

---

      [1] These facts are taken from plaintiffs' first amended complaint [Docket No. 53] and are presumed to be true for the purposes of this order.

deploy" into Ms. Ditter's face.  *Id.* at 6, 10, ¶¶ 17, 20.  The airbag system was "defective, dangerous, insufficient, inadequate and unsafe" in the "sensors, and the setting, calibration and programming . . . as to when and under what circumstances, and with what amount of force" the airbag system should cause the airbag to deploy.  *Id.* at 10, ¶ 20.  As a result of the defective airbag deploying, Ms. Ditter suffered "serious and permanent injuries, including a brain injury, facial laceration, and blindness in her right eye."  *Id.* at 10–11, ¶ 20.

Plaintiffs bring three claims: (1) strict product liability, (2) negligent product liability, and (3) loss of consortium.  *Id.* at 13–26, ¶¶ 27–61.  Defendant Subaru Corporation moved to dismiss each of these claims for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Docket No. 63 at 1.

## II.  LEGAL STANDARD[2]

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether

---

[2] The Tenth Circuit has noted that the extent of a plaintiff's burden to establish personal jurisdiction and the scope of a court's review "depend in part on the nature of the district court's response to defendants' motion seeking dismissal for lack of personal jurisdiction."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).  "A district court has discretion to resolve such a motion in a variety of ways – including by reference to the complaint and affidavits, a pre-trial evidentiary hearing, or sometimes at trial itself."  *Id.*  Here, Subaru Corporation requests a hearing.  Docket No. 63 at 15.  However, both parties have submitted evidence in support of their positions.  The Court therefore will exercise its discretion to resolve Subaru Corporation's motion based on the documents submitted by the parties and will decline Subaru Corporation's request for a hearing on the motion.  This decision dictates the standard of review applied.  *See Dudnikov*, 514 F.3d at 1070.  When, as here, personal jurisdiction is reviewed on the basis of the complaint and affidavits, the Court "tak[es] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiffs' complaint."  *Id.* (citing *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–62 (2007)).  "Similarly, any factual disputes in the parties' affidavits must be resolved in plaintiffs' favor."  *Id.* (citing *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992)).

the Court has personal jurisdiction over a defendant.  The plaintiff bears the burden of establishing personal jurisdiction.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  The plaintiff can satisfy its burden by making a *prima facie* showing. *Dudnikov*, 514 F.3d at 1070.  The Court will accept the well-pled allegations of the complaint as true in determining whether plaintiff has made a *prima facie* showing that personal jurisdiction exists.  *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).  If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further.  *Id.*  The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant.  *Dudnikov*, 514 F.3d at 1070.  "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor."  *Id.*

### III.  ANALYSIS

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014); *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).  The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process.  *See Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1220 (10th Cir. 2021);

*Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction.  Where general jurisdiction is asserted over a nonresident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates that the defendant maintains "continuous and systematic general business contacts" in the state.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  Plaintiffs argue that Subaru Corporation is only subject to specific personal jurisdiction in Colorado.  *See* Docket No. 53 at 5–6, 11–13, ¶¶ 11–13, 23–26; Docket No. 71 at 5 ("specific jurisdiction exists over Subaru Corporation").  The Court therefore does not address general personal jurisdiction.

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum."  *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017).  That is, "[a] plaintiff's injury must 'arise out of or relate to' the defendant's forum contacts."  *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)); *see also Hood*, 21 F.4th at 1221–22.  In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in

4

the forum State and is therefore subject to the State's regulation.'"  *Bristol-Myers*, 137 S.

Ct. at 1780 (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915,

919 (2011)).  The "common formulation of the rule demands that the suit 'arise out of or

relate to the defendant's contacts with the forum.'"  *Ford Motor Co. v. Mont. Eighth Jud.

Dist. Ct.*, 141 S. Ct. 1017, 1026  (2021) (quoting *Bristol-Myers*, 137 S. Ct. at 1780).  This

rule does not require "proof of causation" between "a plaintiff's suit and a defendant's

activities."  *Id.*  "Specific jurisdiction  . . . is premised on something of a *quid pro quo*: in

exchange for 'benefitting' from some purposive conduct directed at the forum state, a

party is deemed to consent to the exercise of jurisdiction for claims related to those

contacts."  *Dudnikov*, 514 F.3d at 1078.

The specific jurisdiction analysis is two-fold.  First, the Court must determine

whether a defendant has such minimum contacts with Colorado that the defendant

"should reasonably anticipate being haled into court" here.  *World-Wide Volkswagen

Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Within this inquiry, the Court must

determine whether the defendant purposefully directed its activities at residents of the

forum, *Burger King*, 471 U.S. at 472, and whether plaintiff's claim arises out of or results

from "actions by . . . defendant . . . that create a substantial connection with the forum

State."  *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (internal

quotations omitted).  "The contacts needed for this kind of jurisdiction often go by the

name 'purposeful availment.'"  *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Burger King*,

471 U.S. at 475); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (defendant

must take "some act by which [it] purposefully avails itself of the privilege of conducting

activities within the forum State").  "The contacts must be the defendant's own choice

and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  "They must show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there."  *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (internal quotation marks and alterations omitted)).

Second, if a defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice."  *Asahi*, 480 U.S. at 105.  The Court considers several factors as part of this analysis, including: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies.  *Burger King*, 471 U.S. at 477; *see also Hood*, 21 F.4th at 1224 ("[T]he forum State can exercise personal jurisdiction over an out-of-state defendant that has injured a resident plaintiff in the forum State if (1) the defendant has purposefully directed activity to market a product or service at residents of the forum State and (2) the plaintiff's claim arises from essentially the same type of activity, even if the activity that gave rise to the claim was not directed at forum residents." (citing *Ford*, 141 S. Ct. at 1028–29 & n.5)).

**A.  Stream of Commerce Framework**

Plaintiffs seek to establish specific personal jurisdiction under a stream-of-commerce theory.  *See, e.g.*, Docket No. 53 at 5, ¶ 11 ("The Subaru/Subaru

Corporation entities, including the foreign Subaru/Subaru Corporation entities, placed the subject defective products into the stream of commerce with knowledge and intent that such products would reach every state in the United States, including Colorado."); *id.*, ¶ 12 ("Subaru has a regular plan for distribution of automobiles within the United States, including in Colorado, with the goal of achieving a commercial benefit from the sale of those products in Colorado; Subaru places automobiles into the stream of commerce by targeting Colorado through a network of automobile dealers in the State of Colorado"); *id.* at 11–13, ¶¶ 23–26; Docket No. 71 at 5, 9–11, 14–15.

The stream-of-commerce theory was first articulated in *World-Wide Volkswagen*, where the Supreme Court held that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."  444 U.S. at 297–98.  Later, in *Asahi*, the Supreme Court addressed "whether the mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce constitutes 'minimum contacts' between the defendant and the forum State such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."  480 U.S. at 105 (quotation omitted).  In a plurality opinion, Justice O'Connor answered this question in the negative, concluding that

> [t]he "substantial connection" between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.  The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.

7

Id. at 112 (internal citations omitted).

The Supreme Court clarified the stream-of-commerce theory in *J. McIntyre Machinery, Ltd. v. Nicastro*.  In that case, the Court considered whether the New Jersey state courts could exercise jurisdiction over a British manufacturer of a metal-shearing machine that had caused injury to the plaintiff in New Jersey, "notwithstanding the fact that the company at no time either marketed goods in the State or shipped them there." 564 U.S. 873, 878 (2011).  The plaintiff premised his jurisdictional argument on three facts: the defendant's distributor had agreed to market the defendant's machines in the United States, several of the defendant's employees had attended trade shows in the United States, and four of the defendant's machines had ended up in New Jersey.  *Id.* at 886.  In a fractured opinion, the Supreme Court held that these facts were insufficient to support the state courts' exercise of jurisdiction.  The plurality opinion, authored by Justice Kennedy, concluded that "the stream-of-commerce metaphor [could not] supersede either the mandate of the Due Process Clause or the limits on judicial authority that Clause ensures."  *Id.* at 886.  Justice Breyer concurred, agreeing there was "no 'regular . . . flow' or 'regular course' of sales in New Jersey" and "no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else" to support the exercise of jurisdiction.  *Id.* at 889–90 (Breyer, J., concurring).

This Court has previously held that "it is reasonably clear from the divided Supreme Court decisions that 'something more' than merely placing a product into the stream of commerce is required to establish minimum contacts for jurisdictional purposes."  *Fischer v. BMW of N. Am., LLC*, 376 F. Supp. 3d 1178, 1184 (D. Colo.

2019) (quoting *Colo. Cas. Ins. Co. v. Fu San Mach. Co., Ltd.*, No. 16-cv-01244-RBJ, 2017 WL 3189879, at *7 (D. Colo. May 15, 2017)); *see Nicastro*, 564 U.S. at 890–91 (Breyer, J., concurring) (rejecting the view that "a producer is subject to jurisdiction for a products-liability action so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states"); *Lynch v. Olympus Am., Inc.*, No. 18-cv-00512-NYW, 2018 WL 5619327, at *4 n.5 (D. Colo. Oct. 30, 2018) (noting, after survey of cases applying stream-of-commerce theory following *Nicastro*, that not a single court in the Tenth Circuit has "applied the most permissive [stream-of-commerce test], which only requires a defendant to put the offending product into the stream of commerce without any action specifically directed at the forum itself"). The Court has explained that the remaining "challenge is determining whether each new set of facts does or does not provide the 'something more.'" *Fischer*, 376 F. Supp. 3d at 1184 (quoting *Fu San Mach. Co.*, 2017 WL 3189879, at *7.). The Court therefore finds that predicating jurisdiction on a pure stream-of-commerce theory is inconsistent with the Supreme Court's personal jurisdiction jurisprudence. *See id.* at 1185 n.4 (explaining that the Supreme Court has rejected the pure stream-of-commerce theory for personal jurisdiction).

### B. Minimum Contacts

Plaintiff's well-pled allegations, and the uncontested evidence presented by the parties, establish the following jurisdictional facts. Defendants[3] operate worldwide

---

[3] Plaintiffs refer to both defendants collectively as "Subaru," but, as discussed below, rarely distinguish between Subaru Corporation and Subaru of America, Inc.

through various subsidiaries.  Docket No. 53 at 5, ¶ 11.  Defendants placed their vehicles into the stream of commerce "with knowledge and intent that such products would reach every state in the United States, including Colorado."  *Id.*  Defendants have a "regular plan for distribution of automobiles within the United States, including in Colorado," have "place[d] automobiles into the stream of commerce by targeting Colorado through a network of automobile dealers" and advertisement, and have established approved Colorado dealers and service centers.  *Id.*, ¶ 12; *see also* Docket No. 71 at 2–3, 6–7 (noting that Subaru sold over 702,000 new cars in the United States in 2020, manufactures hundreds of thousands of vehicles in the United States, and has over 7,000 employees in the United States).  Defendants also "engage[] in parts distribution operations within Colorado," "market[] and [sell] defective products within Colorado," and "utilize[] the Colorado [c]ourt system in prosecuting and defending actions."  Docket No. 53 at 11–12, ¶ 24.

Subaru Corporation is a Japanese company that is publicly traded on the Tokyo Stock Exchange and headquartered in Japan.  Docket No. 63 at 3; Docket No. 63-2 at 2, ¶ 3.  Subaru Corporation is not incorporated anywhere in the United States, is not qualified to do business in the United States, has no agent for service of process in the

---

("Subaru of America").  *See, e.g.*, Docket No. 53 at 11–12, ¶ 24 ("SUBARU has purposefully availed itself of the benefits of doing business in Colorado"; "SUBARU has a regular plan for distribution of automobiles in the United States, including in Colorado"; "SUBARU maintains authorized dealerships in Colorado"; "SUBARU places automobiles into the stream of commerce by targeting Colorado"; "SUBARU has . . . warranty repair and regulatory recall responsibilities . . . in . . . Colorado"; "SUBARU engages in parts distribution operations within Colorado"; "SUBARU marketed and sold defective products within Colorado"; and "SUBARU utilized the Colorado Court system in prosecuting and defending actions.").

United States, and does not pay taxes in the United States.  Docket No. 63-2 at 3,

¶¶ 13–15.  Subaru Corporation does not sell vehicles directly to dealers or to the

general public in Colorado, distribute vehicles to dealers or to the general public in

Colorado, design or manufacture vehicles in Colorado, maintain a sales force in

Colorado, or conduct sales or advertising campaigns in Colorado.  *Id.*, ¶¶  9–13.[4]

Subaru of America, a New Jersey limited liability company, is the "exclusive

United States distributor" of new Subaru vehicles in the United States.  *Id.*, ¶ 9.  Subaru

of America, not Subaru Corporation, controls the distribution of Subaru vehicles in the

United States.  *Id.*  Subaru of America and Subaru Corporation are "separate and

distinct legal entit[ies]."  *Id.*, ¶ 6.  The two companies have their own separate policies

and procedures and maintain separate books and records.  *Id.*, ¶¶ 7–8.

### 1. Purposeful Availment

Subaru Corporation moves to dismiss plaintiffs' claims against it because, it

argues, "there is an absence of any contacts between [Subaru Corporation], a

---

[4]  Plaintiffs allege that "SUBARU CORPORATION has regularly done, and is
doing, business in the State of Colorado and elsewhere throughout the United States,
and has systematically conducted business on a regular basis in the State of Colorado
under and by virtue of the laws of the State of Colorado.  Defendant SUBARU
CORPORATION transacts business in the State of Colorado and is a resident of the
State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction
of this Court."  Docket No. 53 at 2, ¶ 3.  These allegations are conclusory because
plaintiffs provide only a "formulaic recitation of the elements of" personal jurisdiction and
provide no factual support.  *See Dudnikov*, 514 F.3d at 1070–73.  As a result, the Court
does not consider them in the jurisdictional analysis.  Plaintiffs also cite to findings of
fact and judicial admissions from other cases.  *See, e.g.*, Docket No. 71 at 2–3,
nn.10–12.  The Court does not recognize this information.  *See, e.g.*, *Alston v.
DIRECTV, Inc.*, 254 F. Supp. 3d 765, 782 (D.S.C. 2017) ("declaration[s] and the
findings of facts by other courts . . . are not appropriate for the court to consider"); *Study
Edge, LLC v. Skoolers Tutoring Ctr., LLC*, 2017 WL 10646694, at *1 n.1 (N.D. Fla. Nov.
30, 2017) ("This Court cannot take judicial notice of other courts' findings of fact.").

Japanese entity, and the State of Colorado."  Docket No. 63 at 2.  Subaru Corporation, it argues, is only a "foreign manufacturer of a product."  *Id.* at 3.  It argues that it does not "exercise control over where the final product will be marketed, sold, or distributed in the United States," *id.*, and is not Subaru of America's agent in Colorado.  *Id.* at 13–14. In response, plaintiffs argue that the Court has personal jurisdiction over Subaru Corporation because Subaru Corporation is a global business that sells hundreds of thousands of products in the United States and serves a market for its products in Colorado.  Docket No. 71 at 3–4.  Plaintiffs argue that "Subaru/Subaru Corporation . . . placed the subject defective products into the stream of commerce"; "Subaru products are sold and/or used throughout . . . Colorado"; Subaru maintains a "network of automobile dealers in . . . Colorado"; "Subaru . . . directs Colorado residents to approved . . . locales to purchase new Subaru vehicles and to have recall work performed on their products."  *Id.* at 4–5.  Plaintiffs contend that Subaru vehicles "have flooded the Colorado and U.S. markets[] and are not limited to a handful of products that have randomly or fortuitously found their way here."  *Id.* at 11.  Plaintiffs also argue that Subaru of America's contacts with Colorado may be imputed to Subaru Corporation for jurisdictional purposes.  *Id.*[5]  For the reasons below, the Court does not find any of these arguments sufficient to establish personal jurisdiction over Subaru Corporation.

---

[5] Plaintiffs also argue that "Subaru routinely defends product liability matters in the United States and has previously admitted to the personal jurisdiction of a Colorado court."  *Id.* at 2–3.  This argument is unpersuasive.  Plaintiffs rely on a Denver District Court case, which is not binding on this court.  *Fischer*, 376 F. Supp. 3d at 1188 (citing *Matthys v. Narconon Fresh Start*, 104 F.  Supp. 3d 1191, 1198 (D. Colo. 2015) (stating that inquiry into whether a court's exercise of personal jurisdiction comports with due process is "a question of federal law")).

See Fischer, 376 F. Supp. 3d at 1185; Alcohol Monitoring Sys., 682 F. Supp. 2d at 1245 ("Generally speaking, a Court must have personal jurisdiction over each claim asserted against [each] defendant." (citing McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009); Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004)).

Throughout their response, plaintiffs rely on a recent Supreme Court case, Ford Motor Co.  Docket No. 71 at 8–10.  That case, however, does not provide plaintiffs the support they need.  As an initial matter, as the Tenth Circuit noted in Hood, "the purposeful-direction prong was not before the Court in Ford," because "Ford conceded the issue."  21 F.4th at 1226 ("The whole point of Ford was that it is enough if the activity forming the basis of the claim against the defendant is related to the activity of the defendant that establishes that it purposefully directed [its] activities at residents of the forum." (quotation omitted)).

The Court will first distinguish Ford Motor Co. and will then consider each of plaintiffs' jurisdictional arguments.  Ford Motor Co. arose from the consolidation of two products-liability cases against Ford, stemming from two car accidents, one in Minnesota and one in Montana.  In both cases, the accident happened in the forum state, and the victim of the accident was a resident of the forum state.  141 S. Ct. at 1022.  A unanimous Supreme Court held that, although the cars that were involved in the accidents were manufactured and originally sold outside of the forum states, Ford's business activities in the forum states were sufficient to support the states' specific personal jurisdiction.  Id. ("Ford did substantial business in the State – among other things, advertising, selling, and servicing the model of vehicle the suit claims is

defective. . . .  When a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit.").  The Court explained that Ford, a "global auto company," "markets, sells, and services its products across the United States and overseas" and "engages in wide-ranging promotional activities, including television, print, online, and direct-mail advertisements."  *Id.*  The Court also noted Ford's "network of dealers," offering "an array of maintenance and repair services, thus fostering an ongoing relationship between Ford and its customers."  *Id.* at 1023.

The Minnesota and Montana Supreme Courts, whose opinions the United States Supreme Court affirmed, similarly noted the "varied ways Ford 'purposefully' seeks to 'serve the market in Montana,'" *id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 443 P.3d 407, 414 (Mont. 2019)), and how "Ford's 'marketing and advertisements' influenced state residents to 'purchase and drive more Ford models."  *Id.* (quoting *Bandemer v. Ford Motor Co.*, 931 N.W.2d 744, 754 (2019)).  Ford argued that "the state court . . . had jurisdiction only if the company's conduct in the State had given rise to the plaintiff's claims," which was only possible "if the company had designed, manufactured, or – most likely – sold in the State the particular vehicle involved in the accident."  *Id.* The Supreme Court explained that the Court "has stated that specific jurisdiction attaches in cases identical to the ones here – when a company like Ford serves a market for a product in the forum State and the product malfunctions there."  *Id.* at 1027.  The Court cited *World-Wide Volkswagen*, which held,

> if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the

14

> market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

444 U.S. at 297.  In that case, the Court explained, "if Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there – even though the vehicle had been designed and made overseas and sold in New York."  *Ford Motor Co.*, 141 S. Ct. at 1027 (citing *Wold-Wide Volkswagen*, 444 U.S. at 297).  The Court explained that the "scenario" in *World-Wide Volkswagen* is a "paradigm" case of specific jurisdiction.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 & 117 n.5 (2014) (noting that California courts would have jurisdiction "if a California plaintiff, injured in a California accident involving a Daimler-manufactured vehicle, sued Daimler [in that] court alleging that the vehicle was defectively designed").  The Court did not limit jurisdiction "to where the car was designed, manufactured, or first sold."  *Ford Motor Co.*, 141 S. Ct. at 1028.

The Court in *Ford Motor Co.* found *World-Wide Volkswagen* and *Daimler* analogous, noting that Ford regularly conducts business in Montana and Minnesota, urges Montanans and Minnesotans to buy Fords, including the two models that were involved in the accidents at issue in the case, and fosters ongoing connections with its cars' owners.  *Id.* at 1028.  "In other words, Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States.  So there is a strong 'relationship among the defendant, the forum, and the litigation' – the 'essential foundation' of specific jurisdiction."  *Id.* (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984))

15

(internal quotation marks omitted).  Moreover, the plaintiffs in *Ford* were "residents of the forum States," "used the allegedly defective products in the forum States," and "suffered injuries when those products malfunctioned in the forum states."  *Id.* at 1031. The Court concluded that the plaintiffs "brought suit in the most natural State – based on an 'affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that t[ook] place' there."  *Id.* (quoting *Bristol-Myers*, 137 U.S. at 1779–80).  The Court also noted that it has used "this exact fact pattern (a resident-plaintiff sues a global car company, extensively serving the state market in a vehicle, for an in-state accident) as an illustration – even a paradigm example – of how specific jurisdiction works."  *Id.* at 1028 (citing *Daimler*, 571 U.S. at 127 n.5).

 *Ford Motor Co.* is distinguishable from the facts here.  Unlike the plaintiffs in that case, plaintiffs here have not provided sufficient jurisdictional allegations regarding the particular defendant for which jurisdiction is contested.  As an initial matter, the plaintiffs in both the Minnesota and Montana actions sued only one company, Ford Motor Company, a "global auto company" that is "incorporated in Delaware and headquartered in Michigan," but that its "business is everywhere."  141 S. Ct at 1022.  The Court described Ford as responsible for all aspects of the distribution of its automobiles.  *Id.* at 1022–23 ("Ford markets, sells, and services its products across the United States and overseas . . . .  And Ford's own network of dealers offers an . . . ongoing relationship between Ford and its customers.").  Here, however, plaintiffs have sued both the manufacturer and the distributor.  Unlike in *Ford Motor Co.*, where there was a single domestic company that contested jurisdiction, plaintiffs here must provide plausible allegations establishing personal jurisdiction over both defendants.  For the reasons

discussed below, the Court finds that plaintiffs have not done so with respect to Subaru Corporation.

*Ford Motor Co.* found that Ford had conducted substantial business operations in the forum states, including advertising, selling, and servicing Fords there. *See id.* at 1022–23 (noting that Ford marketed and sold its products in the forum states, engaged in nationwide advertising campaigns, including in the forum states, and had a network of dealerships and maintenance and repair operations in the forum states). By contrast, the jurisdictional facts here do not show that Subaru Corporation – as opposed to Subaru of America – marketed, sold, or distributed vehicles in Colorado. Although plaintiffs generically allege that "Subaru" distributes cars in Colorado through authorized dealerships, markets its vehicles in Colorado, maintains a parts and service operation in Colorado, and has employees here, *see, e.g.*, Docket No. 53 at 11–12, ¶¶ 23–24; Docket No. 71 at 4–5, plaintiffs do not differentiate Subaru Corporation from Subaru of America, and the uncontested facts establish that Subaru Corporation does not sell or distribute vehicles to dealers or to the general public in Colorado, design or manufacture vehicles in Colorado, maintain a sales force in Colorado, or direct marketing campaigns at Colorado. Docket No. 63-2 at 3, ¶¶ 9–13. Rather, Subaru of America controls the distribution of Subarus in the United States. *Id.*, ¶ 9. The jurisdictional facts, therefore, do not establish that Subaru Corporation "systematically served a market" in Colorado. *See Ford*, 141 S. Ct. at 1028.

Although the distribution of Subaru vehicles in Colorado "is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve . . . the market for its products," *see World-Wide Volkswagen*, 444 U.S. at 297; *Ford Motor*

17

*Co.*, 141 S. Ct. at 1027, and although "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there," *Daimler*, 571 U.S. at 135 n.13, plaintiffs' allegations are not sufficient to plausibly establish that Subaru Corporation took efforts to serve the Colorado market or directed Subaru of America to "take action" in Colorado. *See id.* Along with failing to distinguish between the defendants, plaintiffs do not contradict Subaru Corporation's affidavit regarding Subaru Corporation's lack of contacts with Colorado. To the contrary, the uncontested facts establish that Subaru of America is a wholly-owned subsidiary of Subaru Corporation and that Subaru of America is the "exclusive United States distributor of new Subaru brand vehicles in the United States," and Subaru of America "controls the distribution of Subaru vehicles in the United States, including in . . . Colorado." Docket No. 63-2 at 3, ¶ 9. Thus, plaintiffs have not demonstrated that Subaru Corporation purposefully directed its activities at Coloradans. *See Hood*, 21 F.4th at 1226.

Plaintiffs emphasize that "Subaru Corporation's largest automobile market is the United States" and that, in 2020, "Subaru sold nearly 702,000 vehicles here." Docket No. 71 at 6. Additionally, "[h]undreds of thousands of Subaru's vehicles are manufactured in the United States." *Id.* However, that there were significant sales of Subarus in the United States and that there are Subaru dealers in Colorado do not establish that Subaru Corporation has sufficient minimum contacts with Colorado, as distribution and sales of Subaru vehicles in the United States are controlled by Subaru of America. *See* Docket No. 63 at 4 ("[Subaru Corporation] does not direct marketing materials to consumers in the United States, including Colorado. . . . In fact, [Subaru Corporation] does not conduct or solicit any continuous or systematic business in

18

Colorado. . . . [Subaru Corporation] does not control the distribution of Subaru vehicles in the United States, including in Colorado." (citations omitted)).  Moreover, these allegations are not specific to Subaru Corporation's contacts with Colorado.  *See Nicastro*, 564 U.S. at 886 (noting that it was "petitioner's purposeful contacts with New Jersey, not with the United States" that were relevant to the jurisdictional analysis); *id.* at 891 (Breyer, J., concurring) (emphasizing that the jurisdictional analysis focuses on the relationship between the defendant and the forum and rejecting view that jurisdiction may be established based solely on the existence of a nationwide distribution system); *Lynch*, 2018 WL 5619327, at *8 (holding that the "fact that [defendant had] sold thousands of scopes in the United States [was] likewise insufficient" to establish personal jurisdiction because the plaintiff had "not pleaded any facts which demonstrate that [defendant] itself sought out the Colorado market"); *Eaves v. Pirelli Tire, LLC*, 2014 WL 1883791, at *19 (D. Kan. May 12, 2014) (finding no personal jurisdiction under the stream of commerce approach where "[t]here [was] nothing of record indicating the extent to which Metzeler tires flowed into Kansas and were sold there").

Although plaintiffs ignore the distinction between Subaru Corporation and Subaru of America in their complaint, plaintiffs contend that the Court has specific personal jurisdiction over Subaru Corporation because Subaru of America's conduct can be imputed to Subaru Corporation, as the latter is a wholly-owned subsidiary of the former. Docket No. 71 at 12.  Similarly, plaintiffs argue that direct sales to consumers is "unnecessary" because Subaru has made a "decision to deliver its products to consumers *through its subsidiary* (even if that delivery occurs in Japan before import to the United States)."  *Id.* at 13–14.  Plaintiffs rely on a portion of the plurality opinion in

*Asahi* where Justice O'Connor discussed "additional conduct" that may be sufficient to demonstrate a defendant's "intent or purpose to serve the market in the forum State" – i.e., the "something more" required under the stream of commerce plus test.  *Id.* at 12 (citing *Asahi*, 480 U.S. at 112 (plurality op.)).  Such conduct included

> designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

*Asahi*, 480 U.S. at 112.  Plaintiffs argue that the last example supports its claim that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."  Docket No. 71 at 12.   However, as mentioned previously, plaintiffs have offered no allegations or evidence that Subaru Corporation "specifically targeted Colorado with its distribution efforts," *see Fischer*, 376 F. Supp. 3d at 1186; Docket No. 71 at 12 ("Subaru has purposefully availed itself of the benefits of the Colorado market and has obtained benefits from having its vehicles distributed and sold here.  It is immaterial that this was done either directly or indirectly through Subaru's wholly owned United States distributor, Subaru of America."), and the creation of a global, or even nationwide, distribution system is insufficient, standing alone, to demonstrate minimum contacts with Colorado.  *See Nicastro*, 564 U.S. at 885–86 (finding no personal jurisdiction where the defendant "directed marketing and sales efforts at the United States"); *id.* at 891 (Breyer, J., concurring) (rejecting view that "a producer is subject to jurisdiction . . . so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system," as such an approach would "abandon the heretofore accepted inquiry of whether, focusing upon

the relationship between the defendant, the forum, and the litigation, it is fair, in light of the defendant's contacts with that forum, to subject the defendant to suit there" (internal quotation marks omitted)); *Lynch*, 2018 WL 5619327, at *8 ("The development of a global or country-level marketing plan does not rise to the level of a 'substantial connection' that 'came about by an action of [the defendant] purposefully directed towards Colorado.'" (internal brackets omitted) (quoting *Asahi*, 480 U.S. at 112)).

The jurisdictional facts that plaintiffs allege in the complaint do not establish the "additional conduct" described in *Asahi* as indicative of "an intent or purpose to serve the market in the forum State."  *Asahi*, 480 U.S. at 112.  As previously mentioned, Subaru Corporation does not sell vehicles to dealers in Colorado and does not conduct sales or marketing campaigns in Colorado.  Docket No. 63-2 at 3, ¶¶ 10–11.  Although "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there," *Daimler*, 571 U.S. at 135 n.13, this implies some degree of direction or control by the defendant.  *See Fischer*, 376 F. Supp. 3d at 1186; *Eaves*, 2014 WL 1883791, at *17–18 (rejecting argument that distributor's involvement in sale of defendant's products "matche[d] what Justice O'Connor was describing in *Asahi*" where the distributor "unilaterally decide[d] when and where to distribute [the defendants'] tires in the United States," and the defendants did "not exercise any control, direction, or influence on these distribution decisions or on [the distributor's] advertising or sales efforts"); *Micheli v. Techtronic Indus., Co, Ltd.*, 2012 WL 6087383, at *13 (D. Mass. Mar. 1, 2013) ("While *Asahi* does identify the marketing of a product 'through a distributor who has agreed to serve as the sales agent in the forum State' as a plus factor, there is no evidence that . . . The Home Depot is an agent of the domestic

subsidiaries.  An agency relationship would exist only if the domestic subsidiaries had manifested their assent to have The Home Depot act on [their] behalf and subject to [their] control." (internal citation and brackets omitted)).  "Absent direction or control, the mere fact that a distributor sells a defendant's products in the forum state does not support the exercise of jurisdiction."  *Fischer*, 376 F. Supp. 3d at 1187; *Nicastro*, 564 U.S. at 878, 887; *id*. at 892–93 (Breyer, J., concurring) (finding defendant's contacts with the forum state insufficient to establish personal jurisdiction where there was no evidence that the U.S. distributor was under the defendant's control); *Eaves*, 2014 WL 1883791, at *18 (finding no personal jurisdiction where defendants did not exercise any control over distributor's advertising, sales, or distribution efforts).[6]

Moreover, while courts have recognized an agency or alter-ego theory of personal jurisdiction under which the activities of a subsidiary company may be imputed

---

[6] "Nor does a parent-subsidiary relationship alone establish the direction or control required for a defendant's conduct to match the "additional conduct" described by Justice O'Connor in *Asahi*."  *Fischer*, 376 F. Supp. 3d at 1187 n.5 (citing *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (finding that the activities of a subsidiary could not be imputed to its parent corporation for purposes of establishing personal jurisdiction because "[a] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity" (internal quotation marks and bracket omitted) ); *Ferrari v. Mercedes Benz USA, LLC*, 2017 WL 3115198, at *2 (N.D. Cal. July 21, 2017) ("Agency relationships may be relevant to the existence of specific jurisdiction, and a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there.  However, if a parent and subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other." (internal citations, quotation marks, and brackets omitted) ); *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1059–60 (C.D. Cal. 2015) (finding that the defendant's subsidiary was a "distributor who has agreed to serve as a sales agent in the forum State" where the two entities did not have a "hands-of parent-subsidiary relationship," but instead "worked closely together on the distribution, sale, lease, servicing, and warranting of the Subject Nissan Vehicles" (internal quotation marks omitted)).

to its parent, *see, e.g.*, *Daimler*, 571 U.S. at 134–35, 135 n.13 (discussing theory that subsidiary's jurisdictional contacts may be imputed to its parent "when the former is so dominated by the latter as to be its alter ego," and noting that "[a]gency relationships . . . may be relevant to the existence of specific jurisdiction"); *Benton*, 375 F.3d at 1081 (considering argument that subsidiary's contacts could be imputed to parent company under agency or alter ego theory); *Warad West, LLC v. Sorin CRM USA, Inc.*, 119 F. Supp. 3d 1294, 1298 (D. Colo. 2015) (noting that an "alter ego theory of personal jurisdiction has been consistently acknowledged in the federal courts" (internal quotation marks omitted)), plaintiffs have not provided any allegations or evidence to support a finding that Subaru Corporation is the general agent or alter ego of Subaru of America. Moreover, the mere existence of a parent-subsidiary relationship will not suffice. *See Benton*, 375 F.3d at 1081 (rejecting argument that court had general jurisdiction over the defendant based on the contacts of its wholly-owned U.S. subsidiary where the plaintiff had "not alleged nor produced evidence to show that [the subsidiary was] the general agent or alter ego of [the defendant]"); *Warad West*, 119 F. Supp. 3d at 1298 (noting that "[t]he ultimate jurisdictional question" under an alter-ego theory "is whether the subsidiary is doing the business of the parent" (internal quotation marks omitted)). Plaintiffs have provided no allegations to establish that Subaru of America is doing the business of Subaru Corporation.[7]  Nor have plaintiffs provided any well-pled allegations

---

[7] Although some courts have recognized that agency and alter ego represent distinct legal concepts, *see, e.g.*, *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1166 (D. Colo. 2003) (noting, in personal jurisdiction analysis, that agency and alter ego are "different legal concepts"); *Dagesse v. Plant Hotel N.V.*, 113 F. Supp. 2d 211, 216 n.2 (D.N.H. 2000) (noting the distinction between the "issue of agency," which allows for "forum-related contacts made by an agent acting within the

or presented any evidence showing that Subaru Corporation exercises control over Subaru of America's distribution, marketing, or maintenance efforts in the United States. To the contrary, the uncontested declaration by Subaru Corporation's in-house counsel establishes that Subaru Corporation and Subaru of America are separate, distinct, and independent corporate entities and that Subaru Corporation does not control the distribution of Subarus vehicles in the United States.  Docket No. 63-2 at 3, ¶¶ 4–13.

In summary, plaintiffs have not demonstrated sufficient minimum contacts between Subaru Corporation and Colorado to support the exercise of specific personal jurisdiction.  The Court will therefore grant Subaru Corporation's motion to dismiss for lack of personal jurisdiction without reaching either whether plaintiffs' lawsuit could be said to "arise out of or *relate to* the defendant[s'] contacts with the forum," *Ford Motor Co.*, 141 S. Ct. at 1026 (quoting *Bristol-Myers*, 137 S. Ct. at 1780), or whether the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice."  *Asahi*, 480 U.S. at 105.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Subaru Corporation's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 63] is **GRANTED**. It is further

---

scope of an agency relationship [to be] attribut[ed] to the principal," and "the issue of whether a parent corporation is subject to personal jurisdiction based on the contacts of its subsidiary, a question that depends upon the piercing of the corporate veil"), the facts alleged in this case do not support application of either theory.  *See Fischer*, 376 F. Supp. 3d at 1189.

**ORDERED** that all claims against defendant Subaru Corporation are

**DISMISSED without prejudice**.

DATED March 25, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge